UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RECLAIM THE RECORDS, ALEC
FERRETTI, ALEX CALZARETH, RICH
VENEZIA,

              Plaintiffs,

              v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

              Defendant.

No. 23 Civ. 1997 (PAE)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS, FOR SUMMARY JUDGMENT, OR FOR SEVERANCE**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2525
Fax: (212) 637-2730
E-mail: ilan.stein@usdoj.gov

ILAN STEIN
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT .................................................................................1

PROCEDURAL HISTORY.....................................................................................2

FACTUAL BACKGROUND....................................................................................3

    I.      The Agency's Policies and Procedures for Handling FOIA Requests .........................3

    II.     Then Agency's Backlog of FOIA Requests..................................................4

    III.    The Agency's Processing of the 89 FOIA Requests at Issue.......................................5

LEGAL STANDARD............................................................................................7

ARGUMENT......................................................................................................8

    I.      "Policy or Practice" Claims Are Not Cognizable Under FOIA....................................8

    II.     Even If the Court Concludes that FOIA Permits "Policy or Practice" Claims, It Should Still Dismiss the Complaint or Grand Summary Judgment .........................12

          A. Any "Policy or Practice" Claim Fails for Lack of Alleged Adherence to an Improper Policy or Practice ...............................................................13

          B. Plaintiffs' Allegations Do Not Satisfy the Stringent Pleading Standard for a Policy or Practice Claim ...................................................................15

    III.    In the Alternative, Summary Judgment Is Warranted Because the Agency Dost Not Have a Policy or Practice of Intentional FOIA Non-Compliance for Any Reason .....17

    IV.    In the Alternative, the Court Should Sever this Action ................................................20

CONCLUSION...................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiello v. Kingston,*
   947 F.2d 834 (7th Cir. 1991) ........................................................................... 20, 21

*Am. Ctr. for Law & Justice v. DOS,*
   249 F. Supp. 3d 275 (D.D.C. 2017) ...................................................................... 15

*Am. Ctr. for Law & Justice v. DOS,*
   289 F. Supp. 3d 81 (D.D.C. 2018) ..................................................................... 15-16

*ASPCA v. Animal & Plant Health Insp. Serv.,*
   60 F.4th 16 (2d Cir. 2023) ............................................................................ passim

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................... 7, 8, 16

*Barone v. United States,*
   2014 WL 4467780 (S.D.N.Y. Sept. 10, 2014) ........................................................... 7

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................................................................... 7

*Cantor Fitzgerald, Inc. v. Lutnick,*
   313 F.3d 704 (2d Cir. 2002) .................................................................................. 7

*Carney v. DOJ,*
   19 F.3d 807 (2d Cir. 1994) ................................................................................... 8

*Cause of Action Inst. v. Eggleston,*
   224 F. Supp. 3d 63 (D.D.C. 2016) ............................................................... 15, 16, 17

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ......................................................................................... 8

*Citizens for Responsibility & Ethics in Wash. v. FEC,*
   711 F.3d 180 (D.C. Cir. 2013) ........................................................... 9, 10, 12, 16

*Citizens for Responsibility & Ethics in Wash. v. DOJ,*
   846 F.3d 1235 (D.C. Cir. 2017) ....................................................................... 14-15

*Competitive Enter. Inst. v. EPA,*
   153 F. Supp. 3d 376 (D.D.C. 2016) ...................................................................... 16

*Ctr. for Biological Diversity v. Gutierrez*,
    451 F. Supp. 2d 57 (D.D.C. 2006) ........................................................................ 16

*Del Monte Fresh Produce N.A. v. United States*,
    706 F. Supp. 2d 116 (D.D.C. 2010) ............................................................... 15, 16

*Elec. Privacy Inf. Ctr. v. DOJ*,
    15 F. Supp. 3d 32 (D.D.C. 2014) ........................................................................... 9

*Feinman v. FBI*,
    680 F. Supp. 2d 169 (D.D.C. 2010) ....................................................................... 1

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ..................................................................................... 7

*Judicial Watch, Inc. v. DHS*,
    895 F.3d 770 (D.C. Cir. 2018) ........................................................... 11, 14, 17, 20

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ................................................................................... 7

*Malik v. Meissner*,
    82 F.3d 560 (2d Cir. 1996) ..................................................................................... 7

*McDonnell v. United States*,
    4 F.3d 1227 (3d Cir. 1993) ..................................................................................... 1

*McKevitt v. Mueller*,
    689 F. Supp. 2d 661 (S.D.N.Y. 2010) ................................................................... 1

*Muttitt v. DOS*,
    926 F. Supp. 2d 284 (D.D.C. 2013) ..................................................................... 16

*Newport Aeronautical Sales v. Dep't of Air Force*,
    684 F.3d 160 (D.C. Cir. 2012) ............................................................................. 15

*Open Am. v. Watergate Special Prosecution Force*,
    547 F.2d 605 (D.C. Cir. 1976) ............................................................................. 20

*Payne Enterprises, Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988) ................................................................. 13, 15, 17

*Pietrangelo v. U.S. Army*,
    334 F. App'x 358 (2d Cir. June 4, 2009) ........................................................... 8, 17

*Pub. Employees for Envtl. Responsibility v. U.S. Dep't of Interior,*
    2006 WL 3422484 (D.D.C. Nov. 28, 2006) ............................................................. 16

*Robinson v. Concentra Health Servs., Inc.,*
    781 F.3d 42 (2d Cir. 2015) ........................................................................................ 8

*Robinson v. Overseas Military Sales Corp.,*
    21 F.3d 502 (2d Cir. 1994) ........................................................................................ 7

*Washington Lawyers' Committee for Civil Rights & Urban Affairs v. DOJ,*
    2024 WL 1050498 (D.D.C. March 10, 2024) ........................................................... 21

*Wetzel v. VA,*
    949 F. Supp. 2d 198 (D.D.C. 2013) ........................................................................... 1

*Wyndham Assocs. v. Bintliff,*
    398 F.2d 614 (2d Cir. 1968) ..................................................................................... 20

**Statutes**

5 U.S.C. § 552(a)(3)(A) .................................................................................................... 9
5 U.S.C. § 552(a)(4)(B) .................................................................................................. 10
5 U.S.C. § 702 ................................................................................................................. 11
5 U.S.C. § 706(2) ............................................................................................................ 11

**Regulations**

6 C.F.R. § 5.8 .................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................ 21, 22
Fed. R. Civ. P. 21 ........................................................................................................... 20
Fed. R. Civ. P. 26(b)(2)(C) ........................................................................................... 17
Federal Rule of Civil Procedure 56(a) ........................................................................... 8

Defendant the United States Citizenship and Immigration Services (the "Agency"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to dismiss the Complaint (Dkt. No. 1 ("Compl.")) under Rule 12(b)(1) or 12(b)(6), or for summary judgment under Rule 56, of the Federal Rules of Civil Procedure. Alternatively, if the Court otherwise denies the Agency's motion and construes the Complaint to include separate claims for each of the 89 FOIA requests identified in the Complaint, the Agency requests that the Court sever the claims under Rule 21 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action relates to 89 FOIA requests submitted by plaintiffs Alec Ferretti, Alex Calzareth, and Rich Venezia,[1] seeking the disclosure of records related to a wide array of issues. Plaintiffs allege that the Agency systematically failed to respond to their FOIA requests in a timely fashion, which they claim "constitutes an ongoing failure . . . to abide by the terms of FOIA." Compl. ¶ 398. Plaintiffs advance a single cause of action, a "policy or practice" claim arising from the Agency's alleged delay in responding to their requests. They ask that the Court declare that the Agency's alleged policy or practice of failing to abide by FOIA's procedural requirements is unlawful, and enjoin the Agency from maintaining the alleged policy or practice.

The Government now moves to dismiss the Complaint, or in the alternative for summary

---

[1] Plaintiff Reclaim the Records did not submit any of the 89 FOIA requests at issue in this action and therefore should be dismissed from this action because it lacks standing to bring a claim. *See, e.g.*, *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 667 (S.D.N.Y. 2010) ("The FOIA provides a cause of action only to a requester who has filed a FOIA request that has been denied."); *Wetzel v. VA*, 949 F. Supp. 2d 198, 202 (D.D.C. 2013) ("[I]f a party has not made a request within the meaning of FOIA, then he does not have standing to bring a lawsuit.") (citing *McDonnell v. United States*, 4 F.3d 1227, 1236-39 (3d Cir. 1993)); *Feinman v. FBI*, 680 F. Supp. 2d 169, 172-73 (D.D.C. 2010) collecting cases and holding that "case law and sound policy" support the conclusion that "standing under FOIA is limited to the person who made the initial request").

judgment.  Plaintiffs' "policy or practice" claim should be dismissed under Rule 12(b)(1) because FOIA does not provide any such remedy.  The Second Circuit has never recognized the viability of a "policy or practice" claim under FOIA, and its recent decision in *ASPCA v. Animal & Plant Health Insp. Serv.*, 60 F.4th 16 (2d Cir. 2023), raises serious doubt as to its viability.

Even if this Court were to conclude that a FOIA "policy or practice" claim might be cognizable under certain circumstances, it should still dismiss the Complaint under Rule 12(b)(6) or grant summary judgment under Rule 56 because the allegations of delay alone are insufficient to state a "policy or practice" claim, and in any event, the Agency declaration establishes that the alleged delays at issue were due to the large volume of FOIA requests that the Agency receives (and works hard to respond to in a timely fashion) rather than any improper policy or practice.

Finally, if the Court declines to grant the Government's motion on these grounds, and if it construes the Complaint to include an individual claim for each of the 89 FOIA requests, it should sever the action under Rule 21.

## PROCEDURAL HISTORY

Plaintiffs take issue with the timeliness of the Agency's responses to 89 FOIA requests that the individual plaintiffs—Alec Ferretti, Alex Calzareth, and Rich Venezia—filed between June 2019 and January 2023.  Compl. ¶¶ 14-387.  They allege that the Agency acknowledged receipt of each of their FOIA requests, *id.*, and sent requests for clarification related to a subset of the 89 FOIA requests at issue, *see id.* ¶¶ 41, 64, 71, 209, 223, 351.[2]  They further allege that, as of the

---

[2] Given the large number of FOIA requests at issue in this litigation, the Government will not provide a procedural history for each of the requests; instead, it respectfully refers the Court to the allegations in the Complaint, *see* Compl. ¶¶ 14-387, which discuss the procedural history of each request.  The Government accepts these allegations as true solely for purposes of this motion, with the exception of any allegation that the institutional plaintiff submitted any of the FOIA requests, *see supra* fn.1.

time that the Complaint was filed in this action, the Agency had not produced any records in response to the 89 FOIA requests at issue.  *See id.* ¶¶ 14-387.[3]

Plaintiffs filed this action on March 8, 2023.  *See* Compl.

## FACTUAL BACKGROUND

### I.    The Agency's Policies and Procedures for Handling FOIA Requests

The Agency employs the following procedures for handling FOIA requests:  For FOIA requests unrelated to alien files, staff members within the Significant Interest Group ("SIG") of the FOIA Office review newly received requests.  *See* August 6, 2024 Declaration of James Baxley ("Baxley Decl.") ¶¶ 6-7.  Requests that involve a high degree of complexity are ordinarily referred to the Complex Staffing Unit.  *Id.* ¶ 9.  If necessary, SIG and Complex Staffing reviewers may contact the FOIA requesters to narrow or clarify their requests.  *Id.*  If the reviewer concludes that there are no problems with the requests, the Agency sends acknowledgment letters, and the requests are sent to USCIS program offices that may have responsive records to conduct searches. *Id.* ¶¶ 26-27.  Once a USCIS program office identifies potentially responsive records, it provides the records to the FOIA Office for processing.  *Id.* ¶ 30.  Records potentially responsive to FOIA requests are generally processed by the Agency on a first-in, first-out basis and, when complete, are moved to an approver queue for review and approval by a supervisor or qualified team member. *Id.* ¶ 12.  If approved, responsive records are produced to the FOIA requester.  *Id.*  To meet its FOIA obligations, the Agency has implemented a tracking system to more efficiently respond to FOIA requests on a first-in, first-out basis.  *Id.* ¶¶ 16, 31.

If a requester is not satisfied with the Agency's determination, the requester may submit

---

[3] The Agency has since produced records responsive to many of the FOIA requests.  *See* Baxley Decl. ¶ 57; *see id.* Exhibit A.

an appeal by utilizing the Agency's administrative appeal process.  *See* 6 C.F.R. § 5.8.

## II.    The Agency's Backlog of FOIA Requests

In recent years, the Agency has experienced a large increase in FOIA requests, including an  increase of almost 55 percent from Fiscal Year (FY) 2020 to FY2022, and another increase of almost 30 percent from FY 2022 to FY 2023.  Baxley Decl. ¶ 17.  In FY 2020, the Agency received 195,930 FOIA requests, which represented approximately forty-nine percent of the 397,671 requests received by the Department of Homeland Security ("DHS") and one-quarter of the 790,688 requests recieved by the entire federal government.  *Id.*  In FY 2021, the number of requests that the Agency received increased to 235,210.  *Id.*  In FY 2022, the number increased to 302,689, representing approximately fifty-six percent of the 539,807 requests received by DHS and more than one-third of the requests received by the federal government.  In FY 2023, the Agency received 391,969 FOIA requests, approximately twice the number of requests it had received just three years prior.  *Id.* ¶ 18.  That represented approximately fifty-eight percent of the 674,856 FOIA requests received by DHS and approximately one-third of the requests received by the federal government.  *Id.*

Plaintiffs are serial requesters.  *Id.* ¶ 40.  In FY 2023 alone, they filed 697 FOIA requests and 256 FOIA appeals.  *Id.*  That is  equivalent to 2-3 requests and one appeal every business day. *Id.*  Their requests comprised nearly one-quarter of all of the requests submitted to the SIG Section of the FOIA Office.  *Id.*  In 2024, Plaintiffs have even increased their already elevated filing rate: In the 156 business days betweeen November 1, 2023, and June 17, 2024, Plaintiffs filed 560 requests, the equivalent of filing approximately 3-4 requests every business day.  *Id.*

The Agency has endeavored to keep up with the large increase in the overall FOIA requests it has received, and it has largely succeeded.  In FY 2020, USCIS processed 191,114 requests and

reported an end-of-year backlog of 20,344 requests. *Id.* ¶ 19. In FY 2021, it processed 251,289 requests and reported a backlog of only 1,599 requests. *Id.* In FY 2022, it processed 299,690 requests and reported a backlog of only 4,433. *Id.* In FY 2023, it processed 384,311 requests and reported only 2,137 requests in backlog. *Id.* In addition, the Agency is currently handling 109 active FOIA litigation matters. *Id.* ¶ 23.

The Agency "makes every effort to respond to FOIA requests and appeals within the timeframes set forth in the FOIA statute." *Id.* ¶ 38. To do so, it relies on its efficient tracking system and its first-in, first-out process. *Id.* ¶ 41. The Agency has also implemented various short- and long-term measures to bolster its capacity. *Id.* ¶ 42. Since January 2022, the Agency has authorized the hiring of 83 additional staff members to support the FOIA program. *Id.* The Agency has also authorized overtime pay for FOIA staff, as well as other Government staff who have been cross-trained to assist the FOIA program. *Id.* ¶ 43. The Agency has also entered into contracts with third parties, as necessary to assist the FOIA program, and currently has a contract in place through March 2025. *Id.* ¶ 44. Furthermore, the Agency has made substantial investments in FOIA-related technology. *Id.* ¶ 45. For example, the Agency developed and deployed new software for FOIA processing to improve and enhance the FOIA program. *Id.* It has also invested in the e-discovery platform, Veritas, and has trained designated staff members in the use of the Veritas system. *Id.* ¶ 47.

These changes illustrate the Agency's commitment to adhering to the FOIA's processing requirements to the greatest extent possible.

### III. The Agency's Processing of the 89 FOIA Requests at Issue

The Agency has followed the process described above in connection with the 89 FOIA requests at issue in this action. Baxley Decl. ¶ 49. Upon receipt of each request, the Agency

opened a new "case" within the Agency's FOIA processing system and assigned a control number to the request. *Id.* It then sent a letter acknowledging receipt to the relevant Plaintiff explaining that the status of the request may be accessed online and that the requester may contact the Agency to discuss the scope of the request. *Id.* Each request was reviewed and tasked either to the Complex Staffing Unit or to the appropriate USCIS program office(s) for a search for responsive records. *Id.* ¶ 50.

The 89 requests "cover a broad range of subjects and require extensive searching and processing of a vast number of potentially responsive records . . . ." *Id.* ¶ 51. The Agency "has worked diligently to respond to each of the Plaintiffs' 89 requests and is continuing to complete searches, process records, and issue responses." *Id.* ¶ 53. For those requests that were properly formulated, searches have been commenced and potentially responsive records have been located and provided to the FOIA Office or scanned and uploaded into the Agency's electronic processing system. *Id.* ¶ 54. The FOIA requests were pending processing on a first-in, first-out basis. Once litigation commenced, the requests were marked as being in litigation and were assigned a FOIA processor for litigation purposes. *Id.*

As of the date of this motion, 41 of the 89 FOIA requests have been completed. *Id.* ¶ 57. The Agency "is continuing to review and process the potentially responsive records for the remaining 48 requests in a reasonable manner" and is "discussing the requests and potentially responsive records with the providing program offices and initiating supplemental searches as appropriate due to leads identified while processing records." *Id.* The Agency "has made every effort to respond to all of Plaintiffs' requests as quickly as possible." *Id.* ¶ 58.

**LEGAL STANDARD**

On a motion to dismiss brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction to adjudicate the complaint. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) ("The burden of proving jurisdiction is on the party asserting it." (internal quotation marks omitted))). Dismissal for lack of subject matter jurisdiction is proper under Rule 12(b)(1) when the Court lacks statutory or constitutional power to adjudicate the complaint. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When assessing a motion brought under Rule 12(b)(1), the Court may consider evidence outside of the pleadings. *Id.*; *Barone v. United States*, No. 12 Civ. 4103 (LAK), 2014 WL 4467780, at *4 (S.D.N.Y. Sept. 10, 2014).

On a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (citation and internal quotation marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *see also Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "[W]here

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failure to state a claim. *Id.* at 679.

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The moving party has the burden of showing that no genuine issues exist as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  In a FOIA case, "[a]ffidavits or declarations supplying facts . . . are sufficient to sustain the agency's burden" on summary judgment, *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (footnote omitted), and an agency's declarations are "accorded a presumption of good faith," *id*. (citation and quotation marks omitted).  If the movant meets its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotations omitted).

## ARGUMENT

### I.    "Policy or Practice" Claims Are Not Cognizable Under FOIA

Dismissal under Rule 12(b)(1) is warranted because FOIA does not provide for "policy or practice" claims.  The Second Circuit "has not yet recognized or articulated the inquiry relevant to a pattern or practice claim in the FOIA context." *Pietrangelo v. U.S. Army*, 334 F. App'x 358, 360 (2d Cir. June 4, 2009).  And the Court's most recent decision on point casts doubt on the viability of any such claim. *See American Society for the Prevention of Cruelty to Animals v. Animal & Plant Health Insp. Serv.*, 60 F.4th 16 (2d Cir. 2023) ("*ASPCA*").  In *ASPCA*, the Court noted that a litigant's request that a court "order the agencies to comply with the FOIA"—which is precisely what the plaintiffs here would have the Court do—is not a valid claim. *Id.* at 22.  In a concurring opinion, Judge Menashi concluded that "a 'policy or practice' claim is not cognizable under the

FOIA." *Id.* at 23.

FOIA does not—expressly or implicitly—provide a basis for litigants to advance "policy or practice" claims. FOIA specifies that upon receipt of a properly submitted request that "reasonably describes" the records sought, 5 U.S.C. § 552(a)(3)(A), an agency is generally to determine within 20 days "whether to comply with such request," *id.* § 552(a)(6)(A)(i), and thereafter to "make the records promptly available" to the requester, *id.* § 552(a)(3)(A). The statute specifies that, if an agency fails to make a determination within 20 days of receipt of a FOIA request, a requestor "shall be deemed to have exhausted his administrative remedies with respect to such request." *Id.* § 552(a)(6)(C)(i). And "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review" with respect to that request. *Id.*

As the D.C. Circuit has explained, the 20-day timeline for agencies to decide whether to comply with requests—and an agency's failure to meet that deadline—simply sets forth a condition precedent for a court to exercise or retain jurisdiction over the underlying FOIA claim. *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 189-90 (D.C. Cir. 2013) ("*CREW*") ("penalty" for agency's nonadherence to FOIA's timelines "is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court"); *Elec. Privacy Inf. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014) ("*EPIC*") ("[F]ar from . . . reading . . . FOIA to require an agency to immediately hand over all of the requested documents as a result of its failure to meet the deadline, *CREW* makes clear that the impact of blowing the 20-day deadline relates only to the requester's ability to get into court."). The statute does not identify any other consequences for an agency's failure to make a "timely" determination. *CREW*, 711

F.3d at 189-90.

Courts have widely recognized that delay in processing FOIA requests is an unfortunate reality with which numerous federal agencies must contend. *See, e.g.*, *CREW*, 711 F.3d at 189-90. FOIA establishes "a comprehensive scheme that encourages prompt request-processing and agency accountability," while recognizing that adherence to the 20-day timetable is not always possible. *Id.* As the D.C. Circuit explained, "it would be a practical impossibility for agencies to process all [FOIA] requests completely within twenty days." *Id.*

FOIA, by its terms, "authorizes a federal district court to provide the narrow remedies of enjoining an agency from improperly withholding records and ordering it to disclose the requested records that were improperly withheld." *ASPCA*, 60 F.4th at 23 (Menashi, J., concurrence). "It does not authorize a court to superintend the policies and practices of that agency." *Id.* Section 552(a)(4)(B) authorizes courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). In deciding whether to provide that remedy, the court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions" set forth in the statute. *Id.* To address improper withholding of agency records, the court may "order[] the production of any agency records improperly withheld from the complainant and assess[] against the United States reasonable attorney fees and other litigation costs," and may also "issue[] a written finding that the circumstances surrounding the withholding raise questions whether the agency personnel acted arbitrarily or capriciously with respect to the withholding." *Id.* § 552(a)(4)(F)(i).

When a court concludes that agency personnel acted arbitrarily or capriciously, FOIA does not empower that court to order the agency to alter its procedures or otherwise change its

operations but instead states that "the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding," and the "Special Counsel . . . shall submit his findings and recommendations to the administrative authority of the agency concerned." *Id.* In the face of arbitrary or capricious agency action, FOIA specifies that the agency's "administrative authority" will "take the corrective action that the Special Counsel recommends." *Id.* Nowhere does the statute grant requesters the right to pursue a "policy or practice" claim against an agency.[4]

Moreover, "allegations based on an agency policy of 'delay' cannot state a claim on which relief can be granted. The FOIA 'prescribes no fixed timeframe within which an agency must produce non-exempt records. Rather, the statute establishes a set of procedures for agencies (and requesters) to follow in furtherance of the general mandate to make non-exempt records promptly available.'" *ASPCA*, 60 F.4th at 24 (Menashi, J., concurring) (quoting *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 791 (D.C. Cir. 2018) (Srinivasan, J., dissenting)). Indeed, "the statute expressly contemplates that an agency could take several months to process a FOIA request, and agencies regularly—and lawfully—take that long to determine whether to produce requested records." *Judicial Watch*, 895 F.3d at 791 (Srinivasan, J., dissenting). A court may not "grant judgment in the requester's favor merely because the default twenty-day period had elapsed without a determination by the agency," considering that "the statute presupposes that the court could recognize that the agency should be given additional time to process the request." *Id.* at 794. "The agency may show that it is 'exercising due diligence in responding to the request' and making

---

[4] As Judge Menashi explained in his *ASPCA* concurrence, the proper vehicle for a requester to challenge an agency policy or practice is the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. That statute authorizes courts to "set aside" agency actions that are "arbitrary" or "capricious." 5 U.S.C. § 706(2). Requesters may challenge agency policies and practices under the APA; they may not do so under FOIA, which does not authorize such claims.

'reasonable progress in reducing its backlog of pending requests.'"  *ASPCA*, 60 F.4th at 24 (Menashi, J., concurring).  "Given the statutory scheme, a requester cannot establish a violation of the FOIA merely by alleging that the agency has engaged in 'delay.'"  *Id.* at 24-25.

The individual Plaintiffs' own conduct—the filing of 89 separate FOIA requests at issue in this case, some of which are quite burdensome*, see* Baxley Decl. ¶ 52, and a total of 778 additional FOIA requests filed during the same timeframe, i.e., between June 24, 2019, and January 7, 2023, *see id.* ¶ 58—underscores why, as the D.C. Circuit recognized, "agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement" and "it would be a practical impossibility for agencies to process all [FOIA] requests completely within twenty days."  *CREW*, 711 F.3d at 189 (quotation marks omitted).  Serial filers of FOIA requests, like Plaintiffs, illustrate why Congress did not create a "policy or practice" cause of action under FOIA: Nothing would prevent individuals from inundating agencies with requests, creating an overwhelming backlog and rendering it impossible for the agency to comply with FOIA's procedural requirements, and then bringing suit alleging a "policy or practice" based solely on agency delay.

Because policy or practice claims regarding agency delay are not cognizable under FOIA, the Court should dismiss Plaintiffs' complaint.

## II.    Even If the Court Concludes that FOIA Permits "Policy or Practice" Claims, It Should Still Dismiss the Complaint or Grant Summary Judgment

Even if the Court concludes that FOIA permits policy or practice claims under certain circumstances—which it should not do—it should still dismiss the Complaint under Rule 12(b)(6) because Plaintiffs do not adequately allege that the Agency abides by an improper policy or practice, or in the alternative the Court should grant summary judgment under Rule 56 because the record establishes that the Agency has made good faith efforts to meet its FOIA obligations.

### A. Any "Policy or Practice" Claim Fails for Lack of Alleged Adherence to an Improper Policy or Practice

Although the Second Circuit has not recognized a "policy or practice" claim under FOIA, some courts outside of this Circuit have done so, but only under narrow circumstances. In *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988), the D.C. Circuit first recognized the possibility of equitable relief based on a "policy or practice" claim following a particularly egregious instance of a recalcitrant agency policy. *Payne Enterprises* concerned the practice by certain Air Force Logistics Command officers of refusing to release copies of bid abstracts in response to the plaintiff's repeated FOIA requests over a two-year period, despite express instructions to the contrary. *Id.* at 488. Those officers would routinely invoke FOIA Exemptions 4 and 5 in refusing to produce the requested records. *Id.* Their refusals were in reality based on concerns about possible increases in Air Force contract prices that might result from disclosure of the bid documents, which concerns were reflected in an Air Force Logistics Command policy letter supporting the systematic refusals. *Id.* Each time the requester sought administrative review, the Secretary of the Air Force released the information and admonished the Air Force officers and commanders for withholding the records, concluding that those officers' position was "wholly unjustified." *Id.* at 488-89. Nonetheless, the officers persisted in refusing to produce the relevant documents. *Id.* at 490. The D.C. Circuit concluded that the agency's conduct was "sufficiently outrageous to warrant a court order," *id.* at 494 (citation omitted), noting that a "policy or practice" claim is cognizable where an agency has a policy or practice that "will impair the party's lawful access to information in the future," *id.* at 491. It explained that "[t]he Secretary's inability to deal with [the] officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offers no justification," entitled Payne to declaratory relief. *Id.* at 494-95.

Since *Payne Enterprises*, courts in the D.C. Circuit have applied the "policy or practice"

doctrine sparingly, and only in a limited set of circumstances.  In *Judicial Watch, Inc. v. DHS*, the plaintiff had submitted numerous FOIA requests to the U.S. Secret Service relating to governmental expenditures on VIP travel.  895 F.3d 770, 773 (D.C. Cir. 2018).  On five occasions between 2012 and 2014, Judicial Watch filed suit in federal court after the Secret Service failed to make requested records available.  *Id.*  Each time, the Secret Service produced non-exempt records, thereby mooting the litigation.  *Id.*  Judicial Watch then submitted nineteen more FOIA requests and, after the Secret Service failed to issue any responses (other than to acknowledge receipt of seventeen of the nineteen requests), Judicial Watch filed suit, adding a "policy or practice" claim.  *Id.*  The D.C. Circuit held that Judicial Watch had adequately alleged "prolonged, unexplained delays in producing non-exempt records," which "could signal the agency has a policy or practice of ignoring FOIA's requirements."  *Id.* at 780.  It explained that Judicial Watch had adequately alleged that "the agency's practice was to utilize delay to flaunt FOIA's procedural requirements, and that filing a lawsuit to obtain requested records was an empty gesture in terms of preventing future prolonged delays . . . because the agency would moot the litigation and escape judicial review of its compliance with FOIA."  *Id.* at 782.  The D.C. Circuit clarified that, while "informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim," "not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief."  *Id.* at 777-778, 782.

The D.C. Circuit has explained that "policy or practice" claims are viable only in a "rare instance of agency delinquency."  *Citizens for Responsibility & Ethics in Washington v. DOJ*, 846 F.3d 1235, 1246 (D.C. Cir. 2017).  To obtain relief, a plaintiff must allege "facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an

ongoing failure to abide by the terms of the FOIA." *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 71 (D.D.C. 2016); *see also Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) ("As in *Payne*, [plaintiff] challenges the permissibility of an Air Force policy."). Second, the conduct underlying the claim must involve the repeated refusal to produce documents or otherwise comply with FOIA in an intentional bid to "hinder the release of non-exempt documents" pursuant to the policy or practice, such as by speciously invoking FOIA's statutory exemptions. *See Payne Enters.*, 837 F.2d at 494; *see also Eggleston*, 224 F. Supp. 3d at 72 ("[U]nlike the plaintiff in *Payne Enterprises*, Plaintiff does not allege that the Agency Defendants have decided, even initially, to not produce any records that should be produced."); *Del Monte Fresh Produce N.A. v. United States*, 706 F. Supp. 2d 116, 120 (D.D.C. 2010) ("*Payne Enterprises* regards the repeated denial of Freedom of Information requests based on invocation of inapplicable statutory exemptions rather than the delay of an action over which the agency had discretion."). Finally, the alleged policy or practice should generally involve "sufficiently outrageous" conduct by the defendant agency. *Am. Ctr. for Law & Justice v. DOS*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017).

### B. Plaintiffs' Allegations Do Not Satisfy the Stringent Pleading Standard for a Policy or Practice Claim

Plaintiffs' policy or practice claim centers exclusively on the Agency's alleged failure to abide by FOIA's requirements in connection with the processing of plaintiffs' FOIA requests by failing or refusing to respond within 20 days or "a reasonable period of time." *See* Compl. ¶ 393. Plaintiffs' allegations of delay, without more, are insufficient to state a claim of an actionable illegal FOIA policy or practice. *See Am. Ctr. for Law & Justice v. DOS*, 289 F. Supp. 3d 81, 87 (D.D.C. 2018) ("[D]elay alone, even repeated delay, is not the type of illegal policy or practice that is actionable under *Payne*." (quoting *Muttitt v. DOS*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013));

*Eggleston*, 224 F. Supp. 3d at 70 (dismissing policy or practice claim that alleged only repeated delay); *Competitive Enter. Inst. v. EPA*, 153 F. Supp. 3d 376, 384 (D.D.C. 2016) (dismissing policy or practice claim where delays were unconnected to a "broader policy or practice"); *Del Monte*, 706 F. Supp. 2d at 120 (dismissing policy or practice claim based on delay); *Ctr. for Biological Diversity v. Gutierrez*, 451 F. Supp. 2d 57, 70–71 (D.D.C. 2006) (mere delays do not constitute a policy or practice); *Pub. Employees for Envtl. Responsibility v. U.S. Dep't of Interior*, No. 06-182 (CKK), 2006 WL 3422484, at *9 (D.D.C. Nov. 28, 2006) (dismissing claim based on a five-month delay).  This is because FOIA already contemplates that delays in making a determination concerning a party's request may occur and may even be necessary, and the statute itself provides a remedy when such delays occur: the right to file a lawsuit in district court.  *See CREW*, 711 F.3d at 189.  Thus, to issue relief on the basis of delay alone would ignore the remedial structure already put in place by FOIA.

To be sure, plaintiffs advance conclusory, threadbare allegations that the Agency has "adopted, endorsed, or implemented a policy or practice" of noncompliance with FOIA based on delay.  Compl. ¶¶ 3, 393.  But such conclusory allegations are insufficient to state a claim to relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Indeed, to state a "policy or practice" claim, plaintiffs must allege "*facts establishing* that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA." *Eggleston*, 224 F. Supp. 3d at 71 (emphasis added).  They must also allege the repeated refusal to produce documents or otherwise comply with the FOIA in an intentional bid to "hinder the release of non-exempt documents" pursuant to the policy or practice, such as by speciously invoking the FOIA's statutory exemptions.  *See Payne Enters.*, 837 F.2d at 494; *see also Eggleston*, 224 F. Supp. 3d at 72.

Here, Plaintiffs have advanced no such allegations. They have not alleged that the Agency "utilize[d] delay to flaunt FOIA's procedural requirements," or used litigation as an "organizing tool" for responding to FOIA requests. *See Judicial Watch*, 895 F.3d at 782. Simply put, Plaintiffs pursue a "policy or practice" claim on delay alone; even those courts that recognize "policy or practice" claims under limited circumstances have made clear that delay alone is insufficient.

For these reasons, the Court should grant the Agency's motion to dismiss.

### III. In the Alternative, Summary Judgment Is Warranted Because the Agency Does Not Have a Policy or Practice of Intentional FOIA Non-Compliance for Any Reason

If the Court does not dismiss plaintiffs' policy or practice claim pursuant to Rule 12(b), it should grant the Agency's motion for summary judgment because there is no genuine dispute that the Agency has not intentionally evaded its FOIA obligations but rather has made good faith efforts to comply with FOIA. Consistent with the principle that the Court may award summary judgment in FOIA actions solely on the basis of information provided by the agency through declarations, resolution of plaintiffs' policy or practice claim can be resolved on summary judgment, without the need for discovery. *See Pietrangelo*, 334 F. App'x at 360 (affirming district court's grant of summary judgment dismissing a policy or practice claim and affirming the court's denial of a motion for discovery on that claim where the agency produced adequate affidavits and the plaintiff "did not make an adequate showing of bad faith" "sufficient to impugn" the affidavits); *see also Judicial Watch*, 895 F.3d at 790 ("District courts, moreover, have many tools at their disposal to focus and streamline inquiry into whether the agency's production times are justified." (citing Fed. R. Civ. P. 26(b)(2)(C), as well as the "reliance on agency affidavits at the summary judgment stage in FOIA exemption dispute").

Setting aside that Second Circuit law does not support a "policy or practice" claim under

any circumstances, and that mere delay is insufficient to support a "policy or practice" claim even in Circuits that have recognized such claims in narrow circumstances, the undisputed evidence reveals that Plaintiffs' "policy or practice" claim fails because the Agency does not maintain any unlawful policy or practice as to how it handles FOIA requests.  To the contrary, the Agency "makes every effort to respond to FOIA requests and appeals within the statutory timeframes set forth in the FOIA statute," Baxley Decl. ¶ 38, and does so in accordance with its "first-in, first-out tracking system," *id.* ¶ 55.  To the extent there are delays in responding to FOIA requests, they are "due to external factors and challenges faced by the [Agency's] FOIA program."  *Id.* ¶ 39.  "In particular, the agency's substantial and increasing FOIA and appeal caseload, litigation burdens, the complexity of FOIA requests and the large volume of records sought by FOIA requesters result[] in delays . . . ."  *Id.*

    As explained in the Agency declaration, the Agency has experienced a huge increase in FOIA requests in recent years.  From FY 2020 to 2022, the Agency saw a 55 percent increase in the number of FOIA requests it received.  *Id.* ¶ 17.  Between FY 2022 and 2023, it experienced another increase of almost 30 percent.  In FY 2020, the Agency received 195,930 FOIA requests; by FY 2023, the number of requests had increased to more than 390,000, representing approximately one-third of the total number of FOIA requests received by the entire federal government.  *Id.* ¶ 18.

    Delays exist in spite of the Agency's "concerted efforts to process all FOIA requests in a timely fashion."  *Id.* ¶ 39.  Indeed, the Agency has "implemented numerous short- and long-term measures to bolster" its ability to respond to all FOIA requests more quickly.  *Id.* ¶ 42.  Since January 2022, the Agency "has authorized the hiring of eighty-three (83) additional positions to support the FOIA program."  *Id.*  The Agency "has also authorized overtime for FOIA and other

18

Government staff cross-trained to assist the FOIA program to maximize its efforts." *Id.* ¶ 43. It has hired contractors to assist in responding to FOIA requests. *Id.* ¶ 44. And it has worked to "improv[e] efficiencies through technology." *Id.* ¶ 45. The Agency has "invested in the e-discovery platform, Veritas, and has trained designated . . . staff in the use of this system." *Id.* ¶ 47. These efforts have enabled the Agency to respond to the ever-increasing number of FOIA requests it receives while reducing its backlog. *See id.* ¶ 19.

With respect to the 89 FOIA requests at issue in this action, the Agency has abided by its established processes. *Id.* ¶ 49. Upon receipt of each request, the Agency assigned a control number to the request and sent a letter to Plaintiffs acknowledging receipt. *Id.* Each request was then "carefully reviewed and either 1) tasked to the Complex Staffing Unit for clarification or narrowing or to identify the appropriate USCIS program office(s) for a search for responsive records, or 2) directly tasked to the appropriate USCIS program office(s) . . . ." *Id.* ¶ 50. "For those requests that were properly formulated, searches were commenced and potentially responsive records were located and provided to the FOIA Office or scanned and directly uploaded into" the Agency's processing software. *Id.* ¶ 54. The "potentially responsive records awaited processing based on USCIS's first in, first out tracking system." *Id.* To date, USCIS has issued final responses to 41 of the 89 FOIA requests at issue. *Id.* ¶ 57. The Agency "is continuing to review and process the potentially responsive records for the remaining 48 requests in a reasonable manner, as well as discussing the requests and potentially responsive records with the providing program offices and initiating supplemental searches as appropriate due to leads identified while processing records." *Id.* The Agency "has made every effort to respond to all of Plaintiffs' requests as quickly as possible." *Id.* ¶ 58.

In light of these facts, plaintiffs cannot credibly allege, much less establish, that the delays

here are "unexplained," "wholly unjustified," or constitute an "abuse" of the FOIA process. *Judicial Watch*, 895 F.3d at 780.  And as the D.C. Circuit has explained, "[t]he good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act." *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976).  Therefore, even if the Court were to conclude that FOIA permits "policy or practice" claims under certain circumstances and that plaintiffs have adequately alleged that claim—which it should not do for the reasons explained above—the Court should, in the alternative, grant summary judgment in the Agency's favor because the undisputed evidence establishes that the Agency does not adhere to an improper policy or practice.

## IV.    In the Alternative, the Court Should Sever this Action

Plaintiffs' "policy or practice" claim represents the sole cause of action in their Complaint. *See* Compl. ¶¶ 395-98.  On its face, the Complaint does not appear to advance a separate cause of action for each of the 89 FOIA requests at issue.  But if the Court were to construe the Complaint to advance a separate claim for each FOIA request, severance of the claims would be warranted under Rule 21.  Rule 21 permits courts to "sever any claim against any party," Fed. R. Civ. P. 21, "even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968); *see also Aiello v. Kingston*, 947 F.2d 834, 835 (7th Cir. 1991) ("[Rule] 21 allows a court to sever claims that are logically distinct.").

Here, severance is warranted because Plaintiffs would otherwise use the "policy or practice" claim "as a 'hook' to shoehorn a broad array of FOIA claims into a single civil action."

*Washington Lawyers' Committee for Civil Rights & Urban Affairs v. DOJ*, No. 23-1328, 2024 WL 1050498, at *14 (D.D.C. March 10, 2024) (appeal filed May 13, 2024) ("*Washington Lawyers' Committee*"). Consolidating numerous, loosely related FOIA requests into a single action "disserves the Federal Rules' salutary goal of 'secur[ing] the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.* (quoting Fed. R. Civ. P. 1). In *Washington Lawyers' Committee*, a case involving thirty-nine FOIA requests—fewer than half the number of requests at issue here—the court severed plaintiff's individual FOIA claims "based on the Court's prior experience with unwieldy FOIA complaints combining in a single lawsuit multiple FOIA requests, each of which seeks entirely different records," which "leads to inefficient, piecemeal litigation." *Id.* The court's decision to sever was further "based on the particular claims at issue in the instance case, which challenge the BOP's handling, apparently, of 39 outstanding FOIA requests that seek records relating to different individuals or different types of more general BOP information, that are at varying stages of administrative processing and thus are 'logically distinct' and should be severed." *Id.* (citing *Aiello*, 947 F.2d at 835).

The concerns animating the court's decision to sever in *Washington Lawyers' Committee* apply with at least as much force here. Plaintiffs' requests are wide-ranging, broad, complex, and logically distinct from each other. By way of illustration, the first six FOIA requests described in Plaintiffs' complaint deal with entirely distinct matters: They involve a request for records "related to the Records Policy Manual covering reconciliation and auditing procedures for missing A- and C-Files," Compl. ¶ 15; records related to the processing of other specific FOIA requests, *id.* ¶ 19; logs of FOIA requests processed in specific calendar years, *id.* ¶¶ 23, 27; and emails sent to or received by a specific individual during a specified time period, *id.* ¶ 31. Among the other requests are those seeking staff directories and official calendars, *id.* ¶¶ 46, 50, 69, 214, 284, 288, 292;

documents related to microfilm collections, *id.* ¶ 124; email attachments containing a specific phrase, sent from a specific inbox, *id.* ¶ 132; maintenance contracts for scanners, *id.* ¶¶ 159-160; staff training records, *id.* ¶ 244; contracts with the Holocaust Memorial Museum, *id.* ¶ 312; and database extracts, *id.* ¶¶ 144, 300, 304, 308.  These broad, varied requests are loosely connected at best.  And the 89 requests are at varying stages of administrative processing:  The Agency has provided a final response to some of the requests, while others are at varying stages of processing. *See* Baxley Decl. ¶ 57.

Plaintiffs should not be permitted to "shoehorn" 89 disparate, unrelated FOIA requests into a single action, when doing so will likely frustrate the "just, speedy, and inexpensive" resolution of Plaintiffs' claims.  Fed. R. Civ. P. 1.

## CONCLUSION

For the reasons set forth above, the complaint should be dismissed.

Dated:  August 9, 2024
        New York, New York

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York
                                        *Attorney for Defendant*

                        By:        /s/ Ilan Stein
                            _____

                                        ILAN STEIN
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel.:  (212) 637-2525
                                        Fax:  (212) 637-2730
                                        E-mail: ilan.stein@usdoj.gov