UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RECLAIM THE RECORDS, ALEC FERRETTI, ALEX CALZARETH, RICH Venezia., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, <br><br> Defendant. | 23-cv-1997 (PAE) |

### DECLARATION OF JAMES BAXLEY

I, JAMES BAXLEY, pursuant to 28 U.S.C. § 1746, declare the following under penalty of perjury:

1. I am the Associate Center Director and Chief FOIA Officer in the Freedom of Information and Privacy Act (FOIA/PA) Unit, National Records Center (NRC), United States Citizenship and Immigration Services (USCIS), within the United States Department of Homeland Security (DHS), in Lee's Summit, Missouri. I have held the position as Associate Center Director since June 17, 2024. I previously served in the United States Department of the Army since 2001. During my service at the Department of the Army, I served as a legal advisor on FOIA/PA issues and held multiple supervisory and leadership positions, including most recently, serving as Director for the Staff Action Control Office from January 2013 through June 2024. I received my Juris Doctor from the University of Pittsburgh School of Law in 1993, and am currently an active member of the District of Columbia Bar.

2. As the Chief FOIA Officer for USCIS, I oversee the FOIA Branch Significant

Interest Group ("SIG"), responsible for processing FOIA requests that are the subject of pending litigation as well as primarily non Alien-File ("A-file") FOIA requests, and the FOIA Policy and Training ("POaT") Group, responsible for the development of USCIS FOIA policy and training within the FOIA program.  In my position, I work with over 200 information access professionals who are responsible for the orderly processing of all public, congressional, judicial, and inter/intra-agency requests or demands for access to USCIS records and information pursuant to the FOIA, Privacy Act, Executive Orders, departmental directives, regulations, and compulsory legal process.

3. Through the exercise of my official duties as Associate Center Director and Chief FOIA Officer, I am familiar with USCIS's standard process for responding to FOIA requests, including the agency's current processing workload.  The statements contained in this declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties.

### I.   The USCIS FOIA Branch

4. The USCIS FOIA Branch is located at the National Records Center (NRC) located in Lee's Summit, Missouri, and is responsible for handling all USCIS FOIA requests received by USCIS.  The FOIA Branch consists of four sections: PoaT, SIG, Customer Service, and Records Disclosure.  In July 2021, the reorganization of the NRC FOIA Branch was announced placing these four sections that originally fell under a single Associate Center Director/ FOIA Officer, under two separate branches—the Policy Branch overseeing PoaT and SIG and the Operations Branch overseeing Customer Service and Records Disclosure.

A.  **Policy Branch-PoaT and SIG Sections**

5. Within the Policy Branch, the PoaT section is responsible for the development of USCIS FOIA policy, guidance and procedures and developing and administering FOIA training programs. Within the POaT section, a dedicated team of staff also review each processed FOIA request seeking A-file material to ensure quality processing.[1]

6. The SIG section is generally responsible for handling FOIA requests other than those that seek records related to A-files. While the majority of FOIA requests received by USCIS are filed by individuals seeking access to A-file material, USCIS also receives a significant number of non-A-File FOIA requests. The non-A-File requests focused on agency policy records, communications or other complex record sets often involve complicated and multi-pronged, detailed requests for records that may entail thousands and sometimes even hundreds of thousands of pages of potentially responsive records, requiring a lengthy search and processing time.

7. As of July 23, 2024, the SIG section consists of approximately thirty-two (32) staff members and is broken into three teams—SIG Operations, SIG FOIA Processing and SIG Litigation. SIG Operations and SIG FOIA Processing primarily handle standard (non-litigation) SIG processing, while SIG Litigation primarily handles all FOIA requests that are the subjects of active litigation. In addition to a SIG Chief, there are three supervisors that oversee each of the SIG teams.

---

[1] A-files are a series of records maintained on a person that document the person's immigration history. A-files are created when an application or petition for a long-term or permanent benefit is received, or when enforcement action is initiated. A-files may exist in physical format, or they may be created in digital format in various electronic case management systems, or they may be a hybrid of both paper and electronic files. *See* USCIS Policy Manual, Volume 1, Part E, Chapter 2 located at https://www.uscis.gov/policy-manual/volume-1-part-e-chapter-2.

8. Within the SIG Operations team, staff designated as case creators are responsible for reviewing and opening new SIG FOIA cases within the FOIA Immigration Records System (FIRST), corresponding to received SIG FOIA requests, and assigning those requests to USCIS program offices for a search for records. When appropriate, SIG case creators may refer SIG FOIA requests considered to have a higher level of complexity to another SIG unit within the SIG Operations team referred to as Complex Staffing.

9. Complex Staffing staff are dedicated to reviewing referred complex requests to assist in identifying USCIS program offices that may have responsive records and, as appropriate, contacting requesters directly in the attempt to obtain clarification or agreement to narrow vague, broad or overly burdensome FOIA requests. To assist in the focusing of potentially responsive records, certain SIG Operations team staff are trained to operate the FOIA Office's e-discovery platform, Veritas, to narrow or focus potentially responsive records by eliminating global duplicates and/or applying limiting parameters to potentially responsive records when appropriate.

10. Once a USCIS program office that has been tasked with a search identifies records potentially responsive to a SIG FOIA request, those records are provided to the FOIA Office for processing, often by directly uploading the records into FIRST. While most Operations staff also assist in processing records potentially responsive to SIG FOIA requests (in addition to their primary duties noted above), another twenty (20) SIG staff members assigned to the SIG FOIA Processing and SIG Litigation teams are primarily dedicated to SIG records processing.

11. SIG Litigation FOIA processors are chiefly dedicated to processing FOIA requests that are in litigation, while SIG FOIA Processing processors are chiefly dedicated to processing

standard non A-file FOIA requests, as well as handling SIG FOIA cases that have been remanded on appeal and processing consultations and referrals from other government agencies.

12. Records responsive to standard SIG FOIA requests are generally processed by the SIG FOIA Processing processors on a first-in, first-out basis and, when complete, moved to an approver queue for review. If a lawsuit is filed, the relevant FOIA request is ordinarily reassigned to a SIG Litigation team processor for handling. Processed records falling under the SIG FOIA Processors or SIG Litigation teams are then sent for review and approval by either a SIG team supervisor or qualified SIG Operations team member; if approved, the records are then produced.

**B. Operations Branch-Customer Service and Records Disclosure Sections**

13. The Customer Service section within the Operations Branch is responsible for the continued technological development of FOIA systems, to include the FIRST FOIA operating system used to process FOIA requests, responding to or directing customer inquiries, managing the intake of FOIA requests, and physically posting materials to the Electronic Reading Room (ERR).

14. The Records Disclosure section is generally responsible for handling A-file requests and, as of July 2024, is overseen by a Records Disclosure Chief and approximately sixteen (16) supervisors, each of which are responsible for a team of staff consisting of approximately 8-11 staff per team, primarily dedicated to processing FOIA and Privacy Act ("PA") requests seeking A-file materials.

15. Due to the volume of requests received by USCIS, the Customer Service section includes a team of staff dedicated to reviewing and creating new A-file FOIA cases within the FIRST FOIA processing system, corresponding to submitted requests, and initiating the search for responsive records. Once the potentially responsive records are identified, they are provided to the FOIA Office, often being directly uploaded into FIRST, for processing. Once uploaded, these

FOIA requests are then processed by the FOIA processing teams on a first-in, first-out basis and, when complete, moved to an approver queue where they are reviewed, as noted above, by PoaT staff for quality processing and, if approved, moved forward for production.

### C. Processing Tracks

16. In order to meet its obligation for all requests, USCIS has implemented a tracking system to more efficiently respond to FOIA requests that is based on a first-in, first-out process. For A-File requests, USCIS uses a three-track processing system organizing requests by 1) simple requests; 2) complex requests; and 3) requests for individuals with upcoming scheduled hearings before an immigration judge.  6 C.F.R.§ 5.5(b).  For non-A-File requests, USCIS uses a two-track system that distinguishes between 1) less complex requests seeking discrete items, and 2) more complex requests that typically involve sensitive records, larger volumes of pages and/or a longer review process.  *Id*.  Once a FOIA case has been opened in response to a FOIA request, the requester may check the status of the request online at the USCIS FOIA website.  *See* https://first.uscis.gov/#/check-status.

### II.    USCIS's FOIA Branch Workload

### A. FOIA Backlog

17. In recent years, USCIS has experienced a huge increase in FOIA requests, including an increase of almost 55% from Fiscal Year ("FY") 2020 to FY2022, and another almost 30% increase from FY2022 to FY2023.  During FY2020, USCIS received 195,930 FOIA requests—approximately forty-nine percent (49%) of the 397,671 requests received by DHS and one quarter of all 790,688 requests received by the entire federal government.  In FY2021, the number of requests that USCIS received increased to 235,210 requests, while in FY2022, USCIS received 302,698 requests—more than 100,000 additional FOIA requests than USCIS received just two years earlier, and representing approximately fifty-six percent (56%) of the 539,807 requests received by DHS and more than a third of the total requests received by the entire

federal government subject to FOIA. *See* www.FOIA.gov.

18. Most recently, the number of requests received by USCIS has continued to accelerate both in number and proportionally when compared to other government agencies subject to the FOIA. In FY2023, USCIS received 391,969 FOIA requests—approximately twice the number of requests received only three years prior. This amount consists of approximately fifty-eight percent (58%) of the total 674,856 FOIA requests received by DHS as a whole and approximately one-third of the requests received government-wide during that same time frame. *See* www.FOIA.gov.

19. Notwithstanding the substantial increase year-over-year, USCIS has made every attempt to keep up with the large volume by processing requests as quickly as possible while continuing to lower its backlog. For example, in FY2020, USCIS processed 191,114 requests and reported an end of year backlog of 20,344 requests. In FY2021, USCIS processed 251,289 requests and reported an end of year backlog of only 1,599 requests. In FY2022, USCIS processed 299,690 requests and, despite receiving almost 50,000 more requests than was processed the previous fiscal year, reported a backlog of only 4,433 requests. *See* www.FOIA.gov. Finally, while facing an unprecedented increase of almost 90,000 FOIA requests in FY2023, USCIS processed 384,311 requests and reduced the end of year backlog by more than half, reporting only 2,137 requests in backlog status.

### B. Appeals

20. In addition to processing initial FOIA requests, the FOIA Office has also dedicated three of its FOIA SIG staff to assist USCIS's Office of Chief Counsel (OCC) in reviewing and responding to administrative appeals under the supervision and direction of OCC staff. As previously noted, the SIG section also handles all SIG FOIA requests remanded back to the FOIA Office on appeal for further action, while the Records Disclosure section handles all remanded appeals seeking A-file materials.

21.     Similar to the FOIA backlog, the appeals backlog has also steadily decreased year-to-year, despite increasing numbers of appeals. For example, in FY2020, OCC received 2,156 new appeals, processed 2,393 appeals, and reported 1 appeal in backlog at the end of the fiscal year. In FY2021, OCC received 2,511 appeals, processed 2,331 appeals, and reported zero cases in backlog at the end of the fiscal year. In FY2022, OCC received 2,656 appeals, processed 2,777 appeals and again reported zero cases in backlog at the end of the fiscal year. *See* [www.FOIA.gov](www.FOIA.gov). Finally, in FY2023, OCC received 3,020 appeals, processed 2,916 appeals and, yet again, reported zero cases in backlog at the end of the fiscal year. In short, the OCC FOIA Office has continued to process an increasing number of FOIA appeals and strives to complete all appeals in a timely manner.

C.  **Litigation**

22.     FOIA litigation also strains FOIA staff resources and limits the resources that the FOIA Office can devote to respond to FOIA requests that are not the subject of litigation. Particularly in light of the recent increases in the number of FOIA requests filed (*see supra*), litigation absorbs resources thereby impacting the agency's ability to respond to initial FOIA requests in a timely fashion. Responding to FOIA requests that are actively being litigated introduces additional steps to the usual FOIA process, including coordination with United States Attorney's Offices, extensive communication and negotiations with plaintiffs, as well as additional interaction with USCIS components, to include continuous coordination and communication with USCIS's OCC.

23.     Currently, the SIG team is handling one-hundred and nine (109) active FOIA litigation matters. While each litigation requires at least one FOIA processor and a supervisor dedicated to meeting the production deadlines imposed by the litigation, multiple processors may be pulled from their regular duties to assist when the litigation is especially large. That is true here, a case involving multiple requesters and eighty-nine (89) separate FOIA requests. Generally, each litigation case requires conducting and verifying searches, reviewing and

processing responsive records, consulting with other government agencies, and making ongoing productions. In addition, FOIA staff are often called upon to respond to questions raised by Plaintiffs during the litigation that may require that they initiate additional searches or that they provide additional information. These additional functions require devoted resources and staffing by the FOIA Office, further limiting available resources.

### III.     USCIS Does Not Have a Pattern or Practice of Delay

#### A.  USCIS's FOIA Processing Steps

24.     As explained below, USCIS reviews and responds to each FOIA request it receives. Upon receipt of a FOIA request, the FOIA Office reviews the request to determine whether it is seeking A-file materials, in which case it is generally assigned to the Records Disclosure section, or non A-file material, in which case it is generally assigned to the SIG section.

25.     Once assigned, FOIA staff reviews the request to determine its nature and scope, and to assess if it is a valid request, i.e., it must reasonably describe the records sought and it must be in accordance with published rules. *See* U.S.C. § 552(a)(3)(A). Ordinarily, either the FOIA Office's Customer Service section for requests seeking A-file materials or the SIG Complex Staffing team for non A-file requests will reach out to requesters if the FOIA staff member determines that the request at issue is overly broad, does not reasonably describe the records sought or if clarification is needed.

26.     If the request appears to be a proper request, an acknowledgment letter is sent to the requester acknowledging receipt and identifying which track the request has been assigned to and the address for the public website where the requester can check on the status of the request. In cases that are expected to involve a large volume of records, the acknowledgment

letter encourages the requester to contact the FOIA Office to discuss potential ways of narrowing the request for faster processing.

27. Generally, within only a few days after receiving a FOIA request, receiving clarification (where clarification is sought), or coming to an agreement to narrow an overly broad request, the FOIA Office identifies the appropriate USCIS program office(s) that may have potentially responsive records and assigns the request to those locations to conduct a search.

28. For non A-file FOIA requests, a copy of the request is also typically provided, along with general instructions on how to conduct a search for responsive records. In addition to searching its own records, those offices tasked to conduct a search are generally asked to identify any other USCIS locations that it believes could have potentially responsive records. The objective of this process is to devise and conduct a search that is reasonably calculated to locate all potentially relevant and responsive records.

29. At times, the search process itself reveals that a FOIA request does not reasonably describe the records sought, is overly broad, or requires clarification. This determination may be based on information provided by the subject matter experts conducting the search explaining that the agency does not maintain information in the manner requested, the request would be overly burdensome, or that additional information is required to conduct a reasonable search, among other reasons.

30. If a search is conducted and potentially responsive records are located, those records are provided to the FOIA Office and are uploaded into the FOIA processing system, FIRST.[2] The FOIA case is then moved into the processing queue for its assigned track determined, in part, by the type and volume of records sought as described above and identified

---

[2] Although most responsive records are uploaded into FIRST, some records, to include Excel spreadsheets, must be processed outside the processing system to preserve the native format of the document.

in the acknowledgement letter sent to the requester.

31. These cases are marked as pending within the processor queue and are typically addressed on a first-in, first-out basis. Cases are not placed in the processing queue until records are uploaded to ensure that simpler cases are not unreasonably delayed behind those cases requiring extensive searches and discussions with program offices and/or communications with requesters to obtain clarification or, potentially, agreement to narrow the request.

32. If the FOIA is reassigned to a SIG Litigation team FOIA processor for handling, it is placed in a litigation queue at which time responses are ordinarily dictated by applicable litigation deadlines, agreement of the parties or litigation strategy.

33. While USCIS may provide an estimated completion date via its online tracker, it is difficult to predict that date with accuracy as the time it takes to complete any given FOIA request, to include the preceding requests in the queue, depends on various factors, including the complexity and volume of the potentially responsive records.

34. While processing records in FIRST, the FOIA processor reviews every line of every page of the potentially responsive records to verify whether the information falls within the scope of the request, requires consult with another government agency or needs to be referred to another government agency for its direct response, as well as determining whether the page is a duplicate or whether the information is subject to a FOIA exemption.

35. As part of the processing, FOIA processors may reach out to the providing program offices to gain additional information about the nature of the records and information. FOIA processors may also follow up on leads identified while processing the records pointing to other potentially responsive records. If those leads reveal the potential for additional responsive records, the FOIA processor will assign the request to those program offices for a supplementary search at that time. While this may result in additional delays, it ensures the agency is conducting a reasonable search by identifying and conducting a search at the location(s) where all potentially responsive records may be located.

36. FIRST automatically tracks each page that has been processed and saves any progress made, even when additional searches are initiated during the processing phase. Once all searches are complete and the potentially responsive records are processed, the records must be reviewed and approved by either a SIG team supervisor or qualified SIG Operations team member before it can be produced.

37. Because many of the SIG complex requests involve tens of thousands of potentially responsive records, with some requests reaching hundreds of thousands of pages, the FOIA Office has at times provided responsive records pursuant to a rolling release schedule. Rolling releases allow the FOIA Office to meet its obligations by providing at least some records each month while ensuring that all FOIA matters progress so that each requester can receive responses.

**B.      USCIS's FOIA Business Practices refute a claim of pattern or practice.**

38. USCIS's FOIA Office does not have a pattern or practice, either formal or informal, of refusing to timely respond to FOIA requests. The FOIA program makes every effort to respond to FOIA requests and appeals within the statutory timeframes set forth in the FOIA statute. 5 U.S.C. § 552(a)(6)(A), (B).

39. Any delay by USCIS in processing FOIA requests is not the result of any policy or practice, but is instead due to external factors and challenges faced by the USCIS FOIA program. In particular, the agency's substantial and increasing FOIA and appeal caseload, litigation burdens, the complexity of FOIA requests and the large volume of records sought by FOIA requesters resulting in delays, notwithstanding USCIS's concerted efforts to process all FOIA requests in a timely fashion.

40. In the face of these challenges, the FOIA Office continuously strives to meet the demands of all requesters fairly without allowing a subset of frequent requesters to monopolize resources. Plaintiffs are among the frequent requestors who strain USCIS's system. For example, in FY2023, Plaintiffs in the instant litigation filed approximately 697 FOIA requests

and 256 FOIA appeals. This is equivalent to filing 2-3 FOIA requests and almost one appeal every business day. Moreover, during FY2023, Plaintiffs' requests made up almost 25% of all requests submitted to the SIG Section of the FOIA Office. Plaintiffs have since increased their rate of filing in FY2024. Over the past 156 business days, from November 1, 2023, through June 17, 2024, Plaintiffs filed another 560 FOIA requests—equivalent to filing approximately 3-4 requests every business day.

41. While Plaintiffs admittedly constitute a large bulk of requests filed with the FOIA Office, USCIS has made every effort to meet the demands of all requesters fairly by relying upon its multi-track system, first-in, first-out process and complex staffing unit to clarify and potentially narrow complex FOIA requests as described above.

42. In addition to these processes, USCIS has also implemented numerous short- and long-term measures to bolster its resources. For instance, since January 2022, USCIS has authorized the hiring of eighty-three (83) additional positions to support the FOIA program.

43. USCIS has also authorized overtime for FOIA and other Government staff cross-trained to assist the FOIA program to maximize its efforts. In FY2023 alone, USCIS employees worked approximately 67,390 hours of overtime in assisting the FOIA program. For FY 2024, as of July, USCIS employees have already worked approximately 60,422 hours of overtime. Currently, USCIS is continuing to authorize overtime so USCIS staff may work beyond their standard work hours to contribute towards responding to FOIA requests as quickly as possible.

44. While USCIS has worked towards meeting the rise in requests by increasing the number of government staff contributing towards the FOIA program, as well as the hours worked by those staff, it has also entered into contracts with third parties to assist with the completion of additional FOIA work. The current contract to assist the FOIA program via work performed by contractors is in place through March 29, 2025.

45. In addition to increasing government and contract staff and expanding work time through the availability of overtime, USCIS has also dedicated its efforts towards improving efficiencies through technology. In this regard, USCIS has developed FIRST, a FOIA

processing system with end-to-end automation capacity that allows requesters to directly file FOIA requests and receive responsive records through the secure FIRST application embedded within myUSCIS.

46. By using the FIRST application, any delay caused by physically mailing in paper requests or waiting for USCIS responses to be delivered to a requester's mailbox is eliminated. FIRST also improves steps involved in document processing by streamlining workflows, allowing automated case movement and direct document upload of potentially responsive records into the processing system and creating processing shortcuts. The implementation of FIRST has also reduced downtime and system degradation compared to prior processing systems used by USCIS. USCIS continues to realize efficiencies through on-going, incremental enhancements of the system.

47. USCIS has also invested in the e-discovery platform, Veritas, and has trained designated SIG staff in the use of this system. Veritas is dedicated to assist the FOIA program in eliminating global duplicates, as well as narrowing and focusing potentially responsive records when appropriate.

48. In short, delays in responding to FOIA requests are attributable to the substantial external demands placed on the FOIA program, to include increases in the FOIA caseload, the heavy burden imposed by litigation, increased complexity of FOIA requests and the large volume of records sought by FOIA requesters, as well as technical constraints associated with responding to those requests. In the face of these challenges, USCIS has continued to invest in resources and technology while striving to respond to all FOIA requests as quickly as possible. Any delay in response to FOIA requests is not due to any policy or practice but rather to the heavy (and increasing) burdens placed on the agency's FOIA Office, including by serial requesters like Plaintiffs.

### IV. The Processing of Plaintiffs' 89 FOIA Requests

49. Upon the receipt of each of Plaintiffs' 89 FOIA requests that are the subject of

this litigation, the steps above were completed.  For each request, a FOIA case was created within the FOIA processing system FIRST.  USCIS then provided Plaintiffs a letter acknowledging the receipt of the request, assigned a control number to the request, identified the track to which the request should be assigned, and informed Plaintiffs that they may check the status of the request online.  USCIS also informed Plaintiffs that it may contact the agency to discuss the scope of their requests.

50.     Each request was carefully reviewed and either 1) tasked to the Complex Staffing Unit for clarification or narrowing or to identify the appropriate USCIS program office(s) for a search for responsive records, or 2) directly tasked to the appropriate USCIS program office(s) for a search for responsive records.

51.     The 89 requests were submitted by four different requesters on different dates from June 2019 through January 2023.  Each of the 89 requests seeks different records on various individuals, subjects, and operational programs.  The 89 requests cover a broad range of subjects and require extensive searching and processing of a vast number of potentially responsive records, to include numerous and voluminous spreadsheets.

52.     Certain requests are so demanding that they have been deemed improper requests. Specifically, for four of the requests (COW2023000152, COW2023000153, COW2023000154, and COW2023000155), USCIS has determined that the requested searches of the agency's electronic data systems would significantly interfere with daily business operations.  Certain other of the 89 requests seek emails for particular staff members, encompassing over a decade of time for a singular search term (COW2023000013 and COW2023000105).

53.     Nevertheless, in a good faith effort to provide responsive records, and despite Plaintiffs continuing to file numerous requests and appeals,[3] USCIS has worked diligently to respond to each of Plaintiffs' 89 requests and is continuing to complete searches, process records

---

[3] Since January 7, 2023—the date of the latest filed FOIA request noted in the Complaint— through July 29, 2024, Plaintiffs have filed an additional 1,249 requests and 314 appeals. This is equivalent of filing three-to-four requests and approximately one appeal each and every workday.

15

and issue responses.

54.   For those requests that were properly formulated, searches were commenced and potentially responsive records were located and provided to the FOIA Office or scanned and directly uploaded into FIRST.  Once within FIRST, those potentially responsive records awaited processing based on USCIS's first in, first out tracking system.[4]  After this litigation commenced, the requests were marked as being in litigation and assigned a FOIA processor to address for litigation purposes.

55.   In a good faith attempt to work with Plaintiffs as part of this litigation, these FOIA cases may be addressed sooner than they would otherwise be, pursuant to the first-in, first-out tracking system.   This in no way means that USCIS only responds to requests once a litigation is filed.  As explained above, USCIS has a process in place to respond to all requests as efficiently and as quickly as possible and, at times, attempts to meet its obligations to all requesters by engaging in rolling releases, as it has been doing in this litigation.

56.   Further, as often occurs while processing potentially responsive records, the FOIA processor has identified leads during her processing pointing to additional potentially responsive records for some of the 89 FOIA requests.  Notwithstanding the additional time and resources required, the FOIA processor has investigated leads that have come up and has tasked additional program offices to conduct supplemental searches, as appropriate pursuant to the FOIA, to ensure the agency has conducted a reasonable search and Plaintiffs have received the records requested, consistent with the FOIA.

57.   USCIS can report at this time that 41 of the 89 FOIA requests subject to this litigation have now been completed.  *See* Exhibit A, Production Chart.  USCIS is continuing to review and process the potentially responsive records for the remaining 48 requests in a reasonable manner, as well as discussing the requests and potentially responsive records with the

---

[4] Although most responsive records were uploaded into FIRST, some records are being processed outside the FIRST system to preserve the native format of the document as previously explained herein.

providing program offices and initiating supplemental searches as appropriate due to leads identified while processing records.

58.  USCIS has made every effort to respond to all of Plaintiffs' requests as quickly as possible. Moreover, during the same time frame that these 89 requests were submitted, between June 24, 2019, and January 7, 2023, USCIS responded to approximately 44% of the additional 778 other requests submitted by Plaintiffs within the statutory time frame. Accordingly, USCIS has not adopted, endorsed, or implemented a pattern or practice to intentionally fail to comply with the timelines of the FOIA statute with regard to any of Plaintiffs' requests.

### V. Conclusion

59.  USCIS's FOIA Office does not have a pattern or practice, either formal or informal, of refusing to timely respond to FOIA requests and makes every effort to respond to FOIA requests and appeals within the statutory timeframes set forth in the FOIA statute. 5 U.S.C. § 552(a)(6)(A), (B). In an effort to treat all FOIA requesters fairly and to respond to requests as quickly as possible, USCIS has implemented and followed a multi-track system in which cases are ordinarily addressed on a first-in, first-out basis. Moreover, USCIS has taken numerous measures, as outlined herein, to bolster its resources, which has allowed USCIS to keep its backlog low, even while receiving mounting numbers of FOIA requests.

60.  With regard to the 89 FOIA requests identified in Plaintiffs' Complaint, USCIS is attempting to meet its obligation to all requesters by providing Plaintiffs responsive records on a rolling basis. The FOIA Office has generally reviewed in excess of 500 pages per month, as well as numerous spreadsheets, and intends to continue processing Plaintiffs' requests as quickly as possible while attempting to treat all requestors fairly.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed in Denver, North Carolina, on this 6th day of August 2024.

_____
JAMES BAXLEY
Associate Center Director and Chief
FOIA Officer
Freedom of Information Act & Privacy Act Unit
USCIS National Records Center