UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RECLAIM THE RECORDS, ALEC FERRETTI, ALEX CALZARETH, RICH VENEZIA,

      Plaintiffs,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

      Defendant.

No. 23 Civ. 1997 (PAE)

---

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS, FOR SUMMARY JUDGMENT, OR FOR SEVERANCE, AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2525
Fax: (212) 637-2730
E-mail: ilan.stein@usdoj.gov

ILAN STEIN
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND ....................................................................................................2

ARGUMENT .............................................................................................................................3

    I.    "Policy or Practice" Claims Are Not Cognizable Under the FOIA ..............................3

    II.   Even If the Court Concludes that the FOIA Permits "Policy or Practice" Claims, It Should Still Dismiss the Complaint or Grant Summary Judgment in the Government's Favor .......................................................................................................7

    III.  Summary Judgment in the Government's Favor Is Also Warranted Because the Agency Does Not Have a Policy or Practice of Intentional FOIA Non-Compliance ....9

    IV.  In the Alternative, the Court Should Sever this Action ...............................................13

CONCLUSION .........................................................................................................................15

## TABLE OF AUTHORITIES
Page(s)

**Cases**

*Am. Ctr. for Law & Justice v. DOS*,
   249 F. Supp. 3d 275 (D.D.C. 2017) .................................................................................. 7-8

*Am. Ctr. for Law & Justice v. DOS*,
   289 F. Supp. 3d 81 (D.D.C. 2018) ..................................................................................... 8, 9

*American Society for the Prevention of Cruelty to Animals v. Animal & Plant Health Insp. Serv.*,
   60 F.4th 16 (2d Cir. 2023) ............................................................................................ 1, 4, 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 9

*Cause of Action Inst. v. Eggleston*,
   224 F. Supp. 3d 63 (D.D.C. 2016) ..................................................................................... 8, 9

*Citizens for Responsibility & Ethics in Wash. v. FEC*,
   711 F.3d 180 (D.C. Cir. 2013) ....................................................................................... 4, 8, 10

*Competitive Enter. Inst. v. EPA*,
   153 F. Supp. 3d 376 (D.D.C. 2016) ....................................................................................... 8

*Ctr. for Biological Diversity v. Gutierrez*,
   451 F. Supp. 2d 57 (D.D.C. 2006) ......................................................................................... 8

*Del Monte Fresh Produce N.A. v. United States*,
   706 F. Supp. 2d 116 (D.D.C. 2010) ....................................................................................... 8

*Elec. Privacy Inf. Ctr. v. DOJ*,
   15 F. Supp. 3d 32 (D.D.C. 2014) ......................................................................................... 10

*Int'l Refugee Assistance Project v. USCIS*,
   551 F. Supp. 3d 136 (S.D.N.Y. 2021) .................................................................................... 4

*Muttitt v. DOS*,
   926 F. Supp. 2d 284 (D.D.C. 2013) ....................................................................................... 8

*Payne Enters., Inc. v. United States*,
   837 F.2d 486 (D.C. Cir. 1988) ............................................................................................... 9

*Pietrangelo v. U.S. Army*,
   334 F. App'x 358 (2d Cir. June 4, 2009) ............................................................................. 5-6

```
```

*Pub. Employees for Envtl. Responsibility v. U.S. Dep't of Interior,*
  No. 06-182 (CKK), 2006 WL 3422484 (D.D.C. Nov. 28, 2006) ................................................ 8

*Washington Lawyers' Committee for Civil Rights & Urban Affairs v. DOJ,*
  No. 23-1328, 2024 WL 1050498 (D.D.C. March 10, 2024) ............................................... 13, 15

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................................ 13, 15

**Statutes**

5 U.S.C. § 552 .................................................................................................................................. 1

5 U.S.C. § 552(a)(4)(B) .................................................................................................................... 4

5 U.S.C. § 552(a)(4)(F)(i) ................................................................................................................. 5

5 U.S.C. § 552(a)(6)(A)(i) ........................................................................................................ passim

5 U.S.C. § 552(a)(6)(C)(i) ................................................................................................................ 4

Defendant the United States Citizenship and Immigration Services (the "Agency" or the "Government"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint (Dkt. No. 1 ("Compl.")) under Rule 12(b)(1) or 12(b)(6), for summary judgment under Rule 56, or for severance under Rule 21 of the Federal Rules of Civil Procedure, and in opposition to plaintiffs' cross-motion for summary judgment.

## PRELIMINARY STATEMENT

Plaintiffs' "policy or practice" claim should be dismissed under Rule 12(b)(1) because the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), does not provide any such remedy. The Second Circuit has never recognized the viability of a "policy or practice" claim under the FOIA, and its recent decision in *American Society for the Prevention of Cruelty to Animals v. Animal & Plant Health Insp. Serv.*, 60 F.4th 16 (2d Cir. 2023) ("*ASPCA*"), raises serious doubt as to its viability. The statutory text does not, implicitly or explicitly, create a right of action for "policy or practice" claims, which plaintiffs can instead (but in this action chose not to) bring under the Administrative Procedures Act ("APA").

But even if "policy or practice" claims were viable under the FOIA, plaintiffs have failed adequately to allege that the Agency adopted an impermissible policy or practice. Most courts that have concluded that the FOIA permits "policy or practice" claims have made clear that such claims do not arise from mere delays. Here, plaintiffs allege nothing more than delays; no egregious, willful conduct by the Agency to evade its FOIA obligations. In any case, summary judgment is warranted in the Government's favor: The Agency declarations filed in support of the its motion establish that the alleged delays result not from an impermissible policy or practice, but because of large volumes of FOIA requests, to which the Agency works diligently to respond in a timely fashion. By contrast, plaintiffs' cross-motion for summary judgment should be denied. Plaintiffs

have failed even to state a cognizable claim or to advance sufficient allegations to state claim for relief, much less establish entitlement to judgment as a matter of law.

Should the Court decline to grant the Government's dispositive motions, it should instead sever the action under Rule 21. Plaintiffs should not be permitted to shoehorn into a single litigation eighty-nine distinct FOIA requests. In opposition, Plaintiffs advance nothing more than conclusory arguments and fail to address the case law that the Government cited in its opening brief.

For these reasons, and for the reasons discussed below, the Court should grant the Government's motion to dismiss or for summary judgment, or in the alternative sever this action.

## FACTUAL BACKGROUND[1]

Like the Agency's FOIA Office more generally, the Significant Interest Group ("SIG"), which is principally responsible for responding to the eighty-nine FOIA requests at issue in this litigation, has implemented a plan to reduce processing times for the FOIA requests it reviews. *See* November 12, 2024 Supplemental Declaration of James Baxley ("Baxley Supp. Decl.") ¶¶ 7-14. As an initial matter, SIG engages in triaging efforts that help promote efficiency, which "include assigning requests to either a simple or complex track based on the volume of records sought," and then assigning complex requests to a dedicated team known as the "Complex Staffing" group. *Id.* It then processes records within those tracks on a first-in, first-out basis. *Id.*

In addition, since 2019, SIG has "implemented organizational changes and increased staffing in an attempt to reduce processing times," including an increase in staff from 14 in 2019, to 35 today. *Id.* ¶ 9. During that time, the number of supervisors has increased from one to four

---

[1] The Government incorporates by reference the factual background set forth in its opening brief. *See* ECF No. 41. Here, the Government limits its factual recitation to those new facts set forth in the James Baxley's supplemental declaration, dated November 12, 2024.

(*i.e.*, a SIG Chief and three other supervisors).  *Id.*  SIG has also added a dedicated intake unit, tripled the number of FOIA processors, and reassigned some staff into temporary detail FOIA positions over the years.  *Id.*  Beyond this, SIG "has recently begun using Veritas for certain cases to apply preliminary exemptions for processor review and final application," which "reduce[s] processing time."  *Id.* ¶ 12.

These efforts have yielded positive results.  Indeed, in the past year, SIG has reduced its backlog of pending requests, even in the face of increasing numbers of requests made.  *Id.* ¶ 20.  In fiscal year ("FY") 2023, SIG had 4,177 "COW" requests[2] that were still pending from prior fiscal years or newly filed.  *Id.*  By contrast, in FY 2024, that number had risen to 11,124.  *Id.*  Despite that large increase in requests, the number of "COW" requests pending for more than 30 business days decreased from 2,006 to 1,803 requests.  *Id.*  Similarly, the percentage of "COW" requests pending for more than 400 business days decreased between FY 2023 and FY 2024, from 43% to 27%.  *Id.* ¶ 21.

## ARGUMENT

### I.   "Policy or Practice" Claims Are Not Cognizable Under the FOIA

As the Government observed in its opening brief, the Second Circuit has never held or even suggested that a plaintiff may advance a FOIA "policy or practice" claim, and for good reason: Such claims are not cognizable under the FOIA.  *See* ECF No. 41 ("Gov't Br.") at 8-12.  In opposition, plaintiffs assert that the Government's argument should be "briskly rejected."  ECF No. 50 ("Opp.") at 8.  In their view, the remedies expressly permitted by the FOIA statute are "a floor, not a ceiling . . . ."  *Id.*  Yet plaintiffs do not cite any cases from within this Circuit where

---

[2] These refer to requests whose control number has a "COW" prefix, like all but one of plaintiffs' requests at issue in this litigation.

3

the court held that plaintiffs may bring FOIA "policy or practice" claims.[3]

In fact, as the Government argued in its opening brief, the statute's plain language and the broader statutory scheme do not support plaintiffs' argument. The FOIA specifies that upon receipt of a properly submitted request, an agency generally must determine within 20 days "whether to comply with such request," 5 U.S.C. § 552(a)(6)(A)(i), and if an agency fails to make a determination within 20 days of receipt of a FOIA request, a requestor "shall be deemed to have exhausted his administrative remedies with respect to such request," *id.* § 552(a)(6)(C)(i). "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review" with respect to that request. *Id.* The 20-day timeline for agencies to decide whether to comply is a condition precedent for a court to exercise or retain jurisdiction over the underlying FOIA claim. *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 189-90 (D.C. Cir. 2013) ("*CREW*"). It does not gives rise to a "policy or practice" right of action. In fact, courts have widely recognized that delay in processing FOIA requests is an unfortunate reality with which federal agencies must contend; as the D.C. Circuit has explained, "it would be a practical impossibility for agencies to process all [FOIA] requests completely within twenty days." *Id.* And the statute expressly provides an agency the opportunity to show that it is "exercising due diligence in responding to the request" and making "reasonable progress in reducing its backlog of pending requests." *Id.* § 552(a)(6)(C).

The remedies for violations authorized by the statute include enjoining agencies from improperly withholding records and ordering the agencies to disclose records. *See* 5 U.S.C.

---

[3] Plaintiffs cite a single district court decision, *Int'l Refugee Assistance Project v. USCIS*, 551 F. Supp. 3d 136 (S.D.N.Y. 2021) ("*IRAP*"), which predates the Second Circuit's *ASPCA* decision, and in which the propriety of "policy or pattern" claims was not at issue. *See id.* at 165.

§ 552(a)(4)(B) (authorizing courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant"). In deciding whether to provide that remedy, courts "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions" set forth in the statute. *Id.* To address improper withholding of agency records, courts may "order[] the production of any agency records improperly withheld from the complainant and assess[] against the United States reasonable attorney fees and other litigation costs," and may also "issue[] a written finding that the circumstances surrounding the withholding raise questions whether the agency personnel acted arbitrarily or capriciously with respect to the withholding." *Id.* § 552(a)(4)(F)(i).

The FOIA also provides an express remedy for allegations related to withholding actions by agency personnel: When a court concludes that agency personnel acted arbitrarily or capriciously, the statute states that "the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding," and the "Special Counsel . . . shall submit his findings and recommendations to the administrative authority of the agency concerned." *Id.* § 552(a)(4)(F)(i). In the face of arbitrary or capricious agency action, the statute specifies that the agency's "administrative authority" will "take the corrective action that the Special Counsel recommends." *Id.* Nowhere does the statute grant requesters the right to pursue a "policy or practice" claim against an agency.

Although the Second Circuit "has not yet recognized or articulated the inquiry relevant to a pattern or practice claim in the FOIA context," *Pietrangelo v. U.S. Army*, 334 F. App'x 358, 360 (2d Cir. June 4, 2009), its most recent decision on point casts doubt on the viability of any such

5

claim, *see ASPCA*, 60 F.4th at 16. There, the Court noted that a litigant's request that a court "order the agencies to comply with the FOIA" would not give rise to a valid claim. *Id.* at 22. In their opposition, plaintiffs fail to address that point, which is directly relevant to their "policy or practice" claim insofar as that claim amounts to a request for the court to order the Agency to comply with the FOIA. Plaintiffs similarly fail to engage with Judge Menashi's well-reasoned *ASPCA* concurrence, where he concluded that "a 'policy or practice' claim is not cognizable under the FOIA." *Id.* at 23. That "a concurrence does not constitute binding precedent," Opp. Br. 8, is not a response to the substantive conclusions in Judge Menashi's concurrence. Plaintiffs' failure to engage with that substance is particularly problematic given that Judge Menashi explains in detail why the statute cannot be read to give rise to a "policy or practice" claim.

Plaintiffs' conclusory assertion that the FOIA statute creates "a floor, not a ceiling," Opp. 8, does not explain why the specific remedy at issue here—a "policy or practice" claim—is authorized (it is not). As argued above, plaintiffs' bald assertion contradicts the Second Circuit's conclusion in *ASPCA* that plaintiffs may not request that courts order agencies merely to comply with the FOIA. 60 F.4th at 22. And plaintiffs do not attempt to explain why the remedy sought here—a "policy or practice" claim based on mere delay—should be available under the FOIA, particularly where (1) the FOIA expressly accounts for agency delays, and (2) the appropriate vehicle for challenging agency actions of the sort that plaintiffs allege here is the APA.[4]

---

[4] Plaintiffs object to what they describe as an "ad hominem attack" in the Government's opening brief. *See* Opp. 9 (citing Gov't Br. 12). The Government did not make any ad hominem attacks; instead, it explained that one reason Congress did not create a cause of action for "policy or practice" claims is because serial filers of FOIA requests, like plaintiffs, could inundate agencies with requests, create an overwhelming backlog, and then bring suit alleging a "policy or practice" of delay. Gov't Br. 12. The Government did not state that that necessarily has occurred here; instead, it highlighted one of the reasons generally that courts should not recognize "policy or practice" claims when Congress itself did not expressly or implicitly create any such right of action.

6

## II. Even If the Court Concludes that the FOIA Permits "Policy or Practice" Claims, It Should Still Dismiss the Complaint or Grant Summary Judgment in the Government's Favor

Even if a "policy or practice" claim were cognizable under the FOIA, plaintiffs have failed adequately to allege a "policy or practice" violation. In opposition, plaintiffs assert that their complaint "challenges the Agency's policy or practice of failing to respond to records requests within the twenty-day timeframe required by 5 U.S.C. § 552(a)(6)(A)(i)." Opp. Br. 11. More specifically, they assert that the Government "repeatedly violated the statute requiring determination and notification, when Defendant failed to notify Plaintiffs of a determination of their decision whether to produce records within 20 days, 30 days, or at all until this litigation was brought . . . ." *Id.* They argue that their complaint "should survive dismissal not only on the number of violations alleged, but on the magnitude of their depth." *Id.* at 12. They claim to have adequately alleged that the purported delays were the result of "a policy or practice on the part of the Agency . . . ." *Id.* (citing Compl. ¶¶ 3, 393, 398).

Plaintiffs' arguments fail. As the Government explained in its opening brief, even where courts have found "policy or practice" claims to be cognizable, they generally have emphasized that delay alone does not give rise to a "policy or practice" violation. Something more must be alleged—namely, agency conduct that is "sufficiently outrageous." *Am. Ctr. for Law & Justice v. DOS*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017); *see Am. Ctr. for Law & Justice v. DOS*, 289 F. Supp. 3d 81, 87 (D.D.C. 2018) ("[D]elay alone, even repeated delay, is not the type of illegal policy or practice that is actionable under *Payne*." (quoting *Muttitt v. DOS*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013)); *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 70 (D.D.C. 2016) (dismissing policy or practice claim that alleged only repeated delay); *Competitive Enter. Inst. v. EPA*, 153 F. Supp. 3d 376, 384 (D.D.C. 2016) (dismissing policy or practice claim where delays

7

were unconnected to a "broader policy or practice"); *Del Monte Fresh Produce N.A. v. United States*, 706 F. Supp. 2d 116, 120 (D.D.C. 2010) (dismissing policy or practice claim based on delay); *Ctr. for Biological Diversity v. Gutierrez*, 451 F. Supp. 2d 57, 70–71 (D.D.C. 2006) (mere delays do not constitute a policy or practice); *Pub. Employees for Envtl. Responsibility v. U.S. Dep't of Interior*, No. 06-182 (CKK), 2006 WL 3422484, at *9 (D.D.C. Nov. 28, 2006) (dismissing claim based on a five-month delay). This is because FOIA already contemplates that delays in making a determination concerning a party's request may occur and may even be necessary, and the statute provides a remedy when such delays occur: the right to file a lawsuit in district court. *See CREW*, 711 F.3d at 189. To issue relief on the basis of delay alone would ignore the remedial structure that the FOIA expressly creates.

Here, plaintiffs allege delay, nothing more. *See* Compl. ¶ 393. In their opposition brief, plaintiffs similarly focus on mere delays. *See* Opp. 11 (complaint "challenges the Agency's policy or practice of failing to respond to records requests within the twenty-day timeframe required by 5 U.S.C. § 552(a)(6)(A)(i)."). They assert that the Agency "failed to notify Plaintiffs of a determination of their decision whether to produce records within 20 days, 30 days, or at all until this litigation was brought . . . ." *Id.* But, as previously stated, delay alone, "even repeated delay, is not the type of illegal policy or practice that is actionable under *Payne*." *Am. Ctr. for Law & Justice v. DOS*, 289 F. Supp. 3d 81, 87 (D.D.C. 2018). Where plaintiffs attempt to allege more than mere delay, their allegations are entirely conclusory. *See, e.g.*, Compl. ¶¶ 3, 393. Such conclusory allegations are insufficient to state a claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, to state a "policy or practice" claim, plaintiffs must allege "*facts establishing* that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA." *Eggleston*, 224 F. Supp. 3d at

8

71 (emphasis added).  The policy or practice must evince an intentional bid to "hinder the release of non-exempt documents," such as by speciously invoking the FOIA's statutory exemptions.  *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988); *see also Eggleston*, 224 F. Supp. 3d at 72.  Here, plaintiffs have advanced no such allegations.

Accordingly, the Court should grant the Agency's motion to dismiss.

### III. Summary Judgment In the Government's Favor Is Also Warranted Because the Agency Does Not Have a Policy or Practice of Intentional FOIA Non-Compliance

The Agency declaration filed in support of the Government's motion for summary judgment provides substantial, unrefuted evidence that the Agency has not intentionally evaded its FOIA obligations but rather has made good faith efforts to comply with the FOIA.  The Government is entitled to summary judgment on plaintiffs' "policy or practice" claim because the Agency does not maintain an unlawful policy or practice in processing FOIA requests.  To the contrary, it "makes every effort to respond to FOIA requests and appeals within the statutory timeframes set forth in the FOIA statute," *see* ECF No. 42 ("Baxley Decl.") ¶ 38, and does so in accordance with its "first-in, first-out tracking system," *id.* ¶ 55.  To the extent there are delays in responding to FOIA requests, they are "due to external factors and challenges faced by the [Agency's] FOIA program": "[i]n particular, the agency's substantial and increasing FOIA and appeal caseload, litigation burdens, the complexity of FOIA requests and the large volume of records sought by FOIA requesters result[] in delays . . . ."  *Id.* ¶ 39.

In opposition to the Government's motion and in support of their cross-motion, plaintiffs advance several arguments.  First, they assert that the Agency's responses to the 89 FOIA requests establish a facial violation of the FOIA.  Opp. 16-17.  They note that the Agency's alleged delay in responding to the eighty-nine FOIA requests at issue constitutes clear evidence of an

9

impermissible policy or practice, belying the Agency's assertion that it "has made every effort to respond to all of Plaintiffs' requests as quickly as possible" and "within the statutory time frames." *Id.* (quoting Gov't Br. 18-19). That argument fails because it misreads the FOIA statute. The 20-day requirement in 5 U.S.C. § 552(a)(6)(A)(i) relates to an agency's determination "whether to comply" with a FOIA request, not to make final productions of responsive records, and under the statute's express provisions, that timeframe may be extended. *See, e.g.*, *Elec. Privacy Inf. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014) ("[F]ar from . . . reading . . . FOIA to require an agency to immediately hand over all of the requested documents as a result of its failure to meet the deadline, *CREW* makes clear that the impact of blowing the 20-day deadline relates only to the requester's ability to get into court."). "[I]t would be a practical impossibility for agencies to process all [FOIA] requests completely within twenty days." *CREW*, 711 F.3d at 189-90. It cannot be that delay alone constitutes evidence of impermissible policies or practices, which numerous courts have acknowledged. *See supra*.

Plaintiffs next assert that "Defendant's papers do not suggest it has a plan that would concretely reduce the processing time and existing backlog for non-A-File FOIA requests." Opp. 17. That argument is contradicted by the Agency's detailed explanation of measures that its FOIA Office has taken, as a whole, to successfully reduce FOIA backlogs. The Agency has invested in technological solutions, including by developing "FIRST, a FOIA processing system with end-to-end automation capacity that allows requesters to directly file FOIA requests and receive responsive records through the FIRST application," Baxley Decl. ¶ 45; using FIRST to "streamline[] workflows" and "allow[] automated case movement and direct document upload of potentially responsive records into the processing system," *id.* ¶ 46; and "invest[ing] in the e-discovery platform, Veritas" and "train[ing] designated SIG staff in the use of this system," which

10

has helped the Agency "eliminat[e] global duplicates" and "narrow[] and focus[] potentially responsive records when appropriate," *id.* ¶ 47. The Agency has also invested in human capital, increasing the number of hours that FOIA staff are authorized to work and increasing the number of Government and third-party staff working on FOIA requests. *Id.* ¶¶ 43-44.

Plaintiffs also challenge the data in the Agency declaration, asserting that the reported numbers cover all FOIA requests, including A-File requests. *See* Opp. 18. In their view, the overall numbers are "only part of the story," and may be misleading because they comingle A-file and non-A-file requests. *Id.* at 18-21. Plaintiffs speculate that because the Agency is under a court-ordered injunction to eliminate backlogs on A-file requests, the progress reflected in the Agency's overall numbers may mask less favorable trends for non-A-file requests. *Id.* Using publicly available information for FY 2023, plaintiffs assert that the "raw data confirms that a large percentage of [the requests pending beyond 30 business days with a 'COW' prefix] were chronically overdue," and conclude that "Defendant's failure to specify the number of SIG-section requests that were backlogged in the fiscal years 2020-2023 means it has not met its burden to show whether staffing or technology changes have actually affected the SIG-section backlog where the 89 requests at issue here were awaiting action." *Id.* at 21.

Plaintiffs' criticism of the data reported in the Agency's initial declaration is misplaced, and their analysis of that data is misleading. As an initial matter, plaintiffs' "policy or practice" allegations are not confined to any particular section of the Agency's FOIA operation. *See, e.g.*, Dkt. No. 1 ¶ 3. Nowhere in their complaint do they distinguish between A-file and non-A-file requests. Therefore, the Government's discussion in its opening papers of Agency-wide data and procedures was not only justified, it was necessary to refute plaintiffs' own allegations of an Agency-wide policy or practice of delay. To the extent plaintiffs think that the Agency's response

should have been narrowly tailored to a particular type of FOIA request or a particular group within the FOIA office, plaintiffs themselves should have advanced narrower allegations in the complaint.

In any event, plaintiffs misinterpret the raw data published by the Department of Homeland Security. Plaintiffs focus on requests whose control numbers have a "COW" prefix, apparently to assess SIG's performance. Opp. 21. They assume that "COW" requests are synonymous with SIG review—that is, they assume that all COW requests are reviewed by SIG, and that SIG does not review non-"COW" requests. Both assumptions are incorrect. In fact, SIG at times reviews non-"COW" requests, including A-file requests, and other groups within the FOIA Office at times review "COW" requests. *See* Baxley Supp. Decl. ¶¶ 15-16. In addition, plaintiffs ignore the fact that the publicly-available data fails to take into account factors resulting in delays that are not reflective of SIG's performance, including (1) requests where the Agency has completed its work but is awaiting input on possible redactions from one or more other federal agencies, (2) requests where the agency has tolled the time to respond, and (3) requests where the Agency has made multiple rolling productions but has yet to produce all responsive records. For all of these reasons, plaintiffs' analysis of publicly-available data does not accurately reflect SIG's performance.

Setting aside these concerns with plaintiffs' methodology, plaintiffs' argument fails even on its own terms: The raw data does not help plaintiffs. Instead, the data supports the Government's motion for summary judgment because it shows that the Agency has been processing more requests each of the past three years, and in the past year, has meaningfully reduced the number of "COW" requests pending beyond 30 business days. According to the raw data, including preliminary data for FY 2024, the number of "COW" requests processed increased from 1,752 in FY 2022, to 2,021 in FY 2023, and to 9,118 in FY 2024. Moreover, between FY 2023 and FY 2024, the number of "COW" requests pending for more than 30 business days

decreased from 2,006 to 1,803. Put differently, the number of "COW" requests pending beyond 30 business days declined by 10.12% between FY 2023 and FY 2024. *See* Baxley Supp. Decl. ¶ 20. This decrease occurred despite a 304.24 % increase in total "COW" requests received, from 4,177 to 11,124, and a 351.16% increase in the number of "COW" requests processed, during that same period. *Id.*

For these reasons and the reasons set forth in the Government's opening brief, the Court should grant summary judgment in favor of the Government and deny plaintiffs' cross-motion for summary judgment.

## IV.  In the Alternative, the Court Should Sever this Action

If the Court denies the Government's motion to dismiss or for summary judgment, it should sever plaintiffs' claims and prevent them from using the "policy or practice" claim "as a 'hook' to shoehorn a broad array of FOIA claims into a single civil action." *Washington Lawyers' Committee for Civil Rights & Urban Affairs v. DOJ*, No. 23-1328, 2024 WL 1050498, at *14 (D.D.C. March 10, 2024) (appeal filed May 13, 2024) ("*Washington Lawyers' Committee*"). Consolidating numerous, loosely related FOIA requests into a single action "disserves the Federal Rules' salutary goal of 'secur[ing] the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.* (quoting Fed. R. Civ. P. 1).

In their opposition, plaintiffs argue that their 89 FOIA requests are closely related insofar as they all constitute part of "good-faith efforts to better understand the reasons for the Agency's poor performance in responding to Plaintiffs' other requests." Opp. 22-23. They conclusorily assert that severance would not "secure . . . a just, speedy or inexpensive determination of these claims" but instead "would frustrate judicial economy by requiring 89 different cases to be entered into the Federal docket . . . ." *Id.* at 23. They then to organize their requests into four groupings:

13

those that, in plaintiffs' view, (1) "sought materials concerning the historical records management methods in use by the Agency"; (2) "were concerned with the Agency FOIA Program's operations and efficiency"; (3) "concerned the Genealogy Program"; and (4) "sought any information concerning the Agency's contact with NAPHSIS." *Id.* at 5-6.

Notwithstanding plaintiffs' efforts to group their requests, plaintiffs have not—and cannot—establish that their requests are anything other than wide-ranging, diverse, and logically distinct from each other. The Agency "has had to design a unique search approach—including unique search terms and search locations, and sometimes requiring clarification from Plaintiffs or discussion with various USCIS program offices or directorates—for each of the 89 FOIA requests at issue." Baxley Supp. Decl. ¶ 24. Plaintiffs' attempt to group their requests by purpose is unavailing. Plaintiffs' reasons for seeking the records are irrelevant to the severance analysis; what matters instead are the requests themselves. *Id.*

The requests at issue are meaningfully distinct from one another; they cover myriad subjects and require disparate searches. That is true even of the requests that plaintiffs group together. For example, plaintiffs assert that Requests 1, 6, 16, and 25 are logically related because they all "sought materials concerning the historical records management methods in use by the Agency." Opp. 5. But even a cursory review of those requests illustrates how unrelated they are to each other: Request 1 seeks documents related to missing-files policies; Request 6 seeks documents related to routine statistical reports generated from the Central Index System; Request 16 seeks all emails to or from a specific individual that contain variations of the term, "P-File"; and Request 25 seeks emails between a specific employee and individuals at the National Archives and Records Administration. *See* Baxley Supp. Decl. ¶ 26. Plaintiffs may well have made these

14

requests as part of a broader effort to understand the Agency's FOIA processes, but that does not change the fact that these requests are distinct and logically unrelated to one another.

Plaintiffs' conclusory assertion that severance of these actions would "frustrate judicial economy" also misses the mark. To begin, plaintiffs do not attempt to explain why consolidating eighty-nine FOIA requests into a single action promotes judicial economy. In fact, as the court held in *Washington Lawyers' Committee for Civil Rights & Urban Affairs*, "unwieldy FOIA complaints combining in a single lawsuit multiple FOIA requests, each of which seeks entirely different records . . . leads to inefficient, piecemeal litigation." 2024 WL 1050498, at *14. Indeed, resolution of this action requires that the Agency finish responding to eighty-nine separate FOIA requests, and settlement discussions to resolve a case involving so many FOIA requests is inherently encumbered by the number of requests—and therefore potential points of contention—at issue. Although it is true that filing a single action is cheaper for plaintiffs—allowing them to avoid filing fees and other costs associated with multiple actions—there are no economies of scale or of scope for the Agency. *See* Baxley Supp. Decl. ¶ 23. Nor are there any meaningful efficiency gains for the Court.

Plaintiffs should not be permitted to "shoehorn" eighty-nine disparate FOIA requests into a single action, when doing so will likely frustrate the "just, speedy, and inexpensive" resolution of plaintiffs' claims. Fed. R. Civ. P. 1.

## CONCLUSION

For the reasons set forth above, the complaint should be dismissed.

Dated:    November 14, 2024
              New York, New York

                Respectfully submitted,

                DAMIAN WILLIAMS
                United States Attorney for the
                Southern District of New York
                *Attorney for Defendant*

By:    /s/ Ilan Stein
                ILAN STEIN
                Assistant United States Attorney
                86 Chambers Street, 3rd Floor
                New York, New York 10007
                Tel.: (212) 637-2525
                Fax: (212) 637-2730
                E-mail: ilan.stein@usdoj.gov