UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RECLAIM THE RECORDS, ALEC FERRETTI, ALEX CALZARETH, RICH Venezia., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, <br><br> Defendant. | 23-cv-1997 (PAE) |

## DECLARATION OF JAMES BAXLEY

I, JAMES BAXLEY, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury:

1. I am the Associate Center Director and Chief FOIA Officer in the Freedom of Information and Privacy Act (FOIA/PA) Unit, National Records Center (NRC), United States Citizenship and Immigration Services (USCIS), within the United States Department of Homeland Security (DHS), in Lee's Summit, Missouri. I have held the position as Associate Center Director since June 17, 2024. I previously served in the United States Department of the Army since 2001. At the Department of the Army, I served as a legal advisor on FOIA/PA issues and held multiple supervisory and leadership positions, including most recently, as Director for the Staff Action Control Office from January 2013 through June 2024. I received my Juris Doctor from the University of Pittsburgh School of Law in 1993 and am currently an active member of the District of Columbia Bar.

2. I provide this Declaration as a supplement to my August 6, 2024 Declaration, *see* ECN No. 42, ("Baxley Decl."), in support of the USCIS Motion to Dismiss, for Summary

Judgment, or for Severance ("Defendant's Motion to Dismiss") and in response to Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss, for Summary Judgment, or for Severance, and Cross-Motion for Summary Judgment ("Plaintiffs' Opposition").

3. Through the exercise of my official duties as FOIA Officer, I am familiar with USCIS's standard process for responding to FOIA requests, including search procedures for locating agency records. The statements contained in this declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the ordinary course of business, and upon information provided to me by other USCIS employees in the course of my official duties.

### Policy & Practice Claim

4. My August 6, 2024 declaration addressed the USCIS FOIA program as a whole because the work of each branch and section within the FOIA program is essential to the accomplishment of the program's overall mission. Further, Plaintiffs did not challenge the policy or practice of any particular branch or section within the FOIA program, but instead asserted generally in their Complaint that "[t]his action challenges the policy and practice of Defendant USCIS of failing to respond to records requests within twenty business days of receiving each request as required by FOIA, 5 U.S.C. § 552(a)(6)(A)(i)." *See* Complaint, ECF No. 1 at ¶ 3.

5. The interdependent relationship between the Operations Branch overseeing the Customer Service and Records Disclosure sections (which generally handles Alien-file, ("A-file") requests), on the one hand, and the Policy Branch overseeing the Policy and Training ("PoaT") and Significant Interest Group ("SIG") sections of the USCIS FOIA program, on

2

the other hand, is foundational to its overall operations. When making strategic determinations, we consider the efficacy of the overall program rather than any one section of the FOIA program in isolation.

6.  In Fiscal Year ("FY") 2024, USCIS received approximately 577,843 requests.[1] A majority of these were A-file requests. Accordingly, a majority of USCIS resources are dedicated to addressing A-file requests. While SIG predominantly handles non-A-file requests, it at times processes some complex A-file requests, A-file requests associated with high-profile individuals, and A-file requests that are subject to litigation.

### SIG Currently Has a Plan to Maximize Efficiency and Continually Implements Improvements

7.  Non-A-file FOIA requests, which make up the majority of requests that SIG handles, generally require more effort to design and perform searches and acquire and process records, as compared to A-file requests. The requests that SIG handles tend to cover a broad array of subjects and require a review of diverse records, located at multiple USCIS directorates or program offices and require unique search methodologies and terms. Moreover, requests handled by SIG often require supplemental searches to follow up on leads identified while processing records. This is distinguishable from A-file FOIA requests, which generally have a narrower scope and can be more easily located.

8.  The breadth of non-A-file requests, and the extended search times frequently required for SIG FOIA requests, result in higher processing times as compared to A-file requests. However, as described in my prior declaration, SIG *does* make significant efforts to reduce processing times. Some of those efforts involve triaging in order to increase efficiency. This includes: assigning requests to either a simple or complex track based on the volume of records sought, processing requests on a first-in, first-out basis, and assigning more

---

[1] Plaintiffs alone filed 735 of those requests in FY 2024.

complex requests to the "Complex Staffing" group, which works with requesters to obtain any necessary clarification or to narrow overly broad requests.

9. In addition, SIG has also implemented organizational changes and increased staffing in an attempt to reduce processing times. In 2019, SIG had a single supervisor overseeing 14 staff. Over the last five years, SIG has grown to 35 staff members, which includes a SIG Chief and three supervisory positions that oversee SIG Operations, SIG FOIA Processing, and SIG Litigation. Through additional hiring and the assignment of staff to serve in temporary detail positions, SIG tripled its number of FOIA processors, added another Veritas operator and a dedicated Intake Specialist Unit, and periodically detailed staff to assist the Complex Staffing Unit.

10. As described in my prior declaration, the dedicated Intake Specialist Unit has helped to streamline the FOIA process by relieving FOIA processors from various administrative tasks, including opening new SIG FOIA cases within the FIRST FOIA processing system and assigning those requests to USCIS program offices to conduct searches of potentially responsive records.

11. The Complex Staffing Unit also promotes efficiency by ensuring that, for complex requests, the FOIA Office understands what the requestors are seeking and attempts to narrow what might otherwise be vague, broad, or overly burdensome FOIA requests.

12. SIG has also recently begun using Veritas for certain cases to apply preliminary redactions to commonly withheld information, such as personally identifiable information. While a FOIA processor must still review these preliminary redactions to ensure proper application of FOIA exemptions, this measure is expected to reduce processing time.

13. SIG has also focused on generating SIG-specific training to develop its staff and ensure efficient, quality processing. Training is on-going and includes cross-training SIG members in all areas relevant to SIG's work, in order to improve processing of requests and increase resources available for processing.

14. SIG has also developed strategic goals and objectives for the next two fiscal

years, which include conducting program office events to continue to educate USCIS as a whole on the FOIA process, as well as timelines for program offices to complete searches and provide records to SIG for processing.

### **"COW" Data**

15.     Plaintiffs' allegations regarding the SIG backlog for FY 2023 are based on their assumptions, some of which are incorrect, regarding publicly-available data. To begin, Plaintiffs incorrectly assume that all cases with a "COW" prefix are handled by SIG and that all cases with the "NRC" prefix are handled by the Records Disclosure section. In fact, SIG sometimes handles "NRC" cases, as well as requests with other case designations, and Records Disclosure at times handles "COW" cases, as well as requests with other case designations. *Id.*

16.     While SIG handles most "COW" cases, one cannot conclude that any request with a "COW" prefix was assigned to SI. The only way to accurately determine which FOIA section was responsible for handling a given "COW" request would be to open and manually review the specific request within the FIRST FOIA processing system.

17.     Plaintiffs also ignore any special circumstances that may affect the timeframe for response. For instance, the FOIA statute permits an agency to "make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester under this section." *See* 5 U.S.C. § 552(a)(6)(A)(ii)(I). The raw data upon which Plaintiffs rely does not reflect any relevant tolling.

18.     Nor does the data account for instances where the agency issues rolling productions. In those instances, SIG may have made a partial production, or may have nearly

completed its productions, but because the case cannot be closed until all responsive records are produced, that request is reported as pending. Therefore, the fact that a request appears in the data as backlogged does not indicate that the agency has yet to produce responsive records.

19. The raw data on which Plaintiffs rely also fails to account for interagency processes over which USCIS has no control. USCIS at times must send responsive records to one or more other government agencies for consultation regarding the appropriate application of exemptions to their materials. Those requests may appear in the data as pending even though USCIS has completed its processing of all USCIS equity, and the delay relates to other agencies' review, which is outside of USCIS's control.

20. Notwithstanding these concerns regarding Plaintiffs' reliance on the publicly-available data for "COW" requests, that data actually supports the Agency's position—namely, that USCIS is making meaningful progress in increasing the number of FOIA requests that it processes in the attempt to reduce backlogged requests, even in the face of ever-increasing requests. As reflected in the table below, the number of "COW" requests pending beyond 30 business days (the maximum days specified at 5 U.S.C. § 552(a)(6)(A) and (B)) was reduced by 10.12% between FY 2023 and FY 2024. This decrease occurred even though the data also shows a 304.24 % increase in total "COW" requests received, and 351.16% increase in the number of "COW" requests processed, during that timeframe.[2]

---

[2] The preliminary FY 2024 raw data has not yet been finalized for publication and will not be available until March 2025, at DHS Annual FOIA Report Raw Data, which can be located at https://www.dhs.gov/publication/annual-foia-report-raw-data. The DHS Annual Report raw data for FY 2020 and FY 2021 does not include FOIA control numbers that indicate the "COW" prefix necessary for applying Plaintiffs' methodology.

| FY | "COW" Requests Received within FY and Pending from prior FYs | "COW" Requests Processed within FY | "COW" Requests pending beyond 30 business days at end of FY | "COW" Requests pending within 30 business days at end of FY |
|---|---|---|---|---|
| FY2022 | 3,579 | 1,752 | 1,721 | 106 |
| FY 2023 | 4,177 | 2,021 | 2,006 | 150 |
| FY 2024 | 11,124 | 9,118 | 1,803 | 203 |

21. The data also indicate progress in the percentage of "COW" requests pending for more than 400 business days. While Table 3 of Plaintiffs' Meyer's Declaration, ECF No. 48 at p. 7, indicates that 43% of "COW" cases were pending for more than 400 business days in FY 2023, preliminary FY 2024 raw data shows that percentage has dropped to 26.62%.

**Plaintiff's Particular Requests**

22. As of the date of this declaration, USCIS has made 65 productions of responsive records and completed its responses to 55 of the 89 requests involved in this litigation.

23. Plaintiffs' 89 FOIA requests are not reasonably related to one another, and the agency has not seen any economies of scale or scope that one would expect to find if the requests were reasonably related.

24. The FOIA Office has had to design a unique search approach—including unique search terms and search locations, and sometimes requiring clarification from Plaintiffs or discussion with various USCIS program offices or directorates—for each of the 89 FOIA requests at issue.

25. Plaintiffs attempt to organize these requests into four (4) groups based on their reasons for seeking the information. From the agency's perspective, a requestor's intent for filing a FOIA request is irrelevant when devising the search. What matters is what is conveyed on the face of the request itself. Here, the 89 requests are not meaningfully related

to one another; they cover myriad subjects and require disparate searches.

26. For example, the groupings set forth in Plaintiffs' Opposition at pp. 9-10 demonstrate how heterogeneous the requests are that Plaintiffs attempt to lump together:[3]

*Group 1*

FOIA Request 1 seeks documents related to the Records Policy Manual covering reconciliation and auditing procedures for missing A- and C-Files, "SOPS from the records holding facilities" and "data available relating to the find of 'lost' files." Exh. 1-A.

FOIA Request 6 seeks documents related to "a list and/or screenshots of titles of all routine statistical reports generated from the Central Index System (CIS)." Exh. 6-A.

FOIA Request 16 seeks documents related to "All emails sent to, from, cc'd to, or cc'd by Donna.R.Ring@uscis.dhs.gov from January 1, 2020-April 1, 2021 which includes the keywords 'PFile' 'P-File' 'P File' 'P-Files' 'P Files' or 'PFiles.' Please include attachments." Exh. 16-A.

FOIA Request 25 seeks documents related to "All emails between Andrew Smith and any email account with @nara.gov from January 1, 2008 - present. Please include emails that were sent to,from, cc'd to, or cc'd by Ms Canard and include attachments. For the purposes of narrowing this request, please only search for emails which contain the phrase 'AR2' 'AR-2' 'AR 2' OR 'Alien Registration.'" Exh. 25-A.

*Group 2*

FOIA Request 2 seeks documents related to "the FOIA requests listed below, including correspondence, emails, research, notes, attachments, and any other records related to processing of and determinations made in those cases" for cases "NRC2019538562; NRC2019538568; NRC2019538569; NRC2019538570; NRC2019538575; NRC2019538581; NRC2019538867;NRC2019538869; NRC2019538872; NRC2019538874; NRC2019538879; NRC2019620092;COW2019501665; APP2020000127." Exh. 2-A.

FOIA Request 8 seeks documents related "Staff directory, showing all staff of the FOIA division of USCIS, including their name, email address, and position." Exh. 8-A.

FOIA Request 35 seeks documents related to "Maintenance contracts and agreements in place for scanners that are used by the staff that process FOIA requests." Exh. 35-A.

---

[3] The exhibit references used within this section correspond to the exhibits attached to Plaintiffs' complaint.

FOIA Request 47 seeks documents related to "All emails sent to, from, cc'd to, or cc'd by any domain ending with '@uscis.dhs.gov' from January 1, 2020-April 1, 2021 which includes the keywords 'Alec' and 'Ferretti.' Please include attachments." Exh. 47-A.

*Group 3*

FOIA Request 5 seeks documents related to "all emails including attachments, beginning January 1, 2015 and ending February 12, 2021 sent to or received by Tammy Meckley (Associate Director, Immigration Records and Identity Services Directorate) that contain any of the following words: genealogy, geneology, genealogist, genealogists, geneologist, geneologists. The search for Tammy Meckley's name or email address should include all of the following fields: 'to,' 'from,' 'cc' and 'bcc' fields." Exh. 5-A.

FOIA Request 17 seeks documents related to "All emails sent to, from, cc'd to, or cc'd by Genealogy.USCIS@uscis.dhs.gov from March 1, 2021-April 1, 2021 which includes the keywords 'FOIA' or 'Freedom of Information.' Please include attachments." Exh. 17-A.

FOIA Request 22 seeks documents related to "List of people on all email distribution lists of which Donna.R.Ring@uscis.dhs.gov is a part." Exh. 22-A.

FOIA Request 50 seeks documents related to "Emails, memoranda of understanding ,agreements, or records of the conversations held with the Italian consulate that are referenced in the attached letter." Exh.50-A.

*Group 4*

FOIA Request 11 seeks documents related to "Procedure manuals and staff instruction regarding how to use the Electronic Verification of Vital Events or Electronic Verification of Vital Events - Fact of Death systems, which USCIS uses to determine if individuals are living or dead." Exh. 11-A.

FOIA Request 12 seeks documents related to "All email correspondence between and any email domains ending with @naphsis.org and @uscis.dhs.gov between the years 2015 and 2020 containing the phrases 'EVVE' or 'Electronic Verification of Vital Events.' Please include attachments." Exh. 12-A.

FOIA Request 13 seeks documents related to "screenshots or extracts of official staff calendars for every entire day of scheduling which has the word 'NAPHSIS.' Please do a global search of all employees, and search from the years 2015-2020." Exh. 13-A.

27. The requests that Plaintiffs attempt to group together are dissimilar. Perhaps most importantly, these groupings do not have any practical effect on the work that USCIS must do to respond to the requests: Each request stands on its own and requires its own search process. There are no efficiencies introduced by Plaintiffs' post-hoc groupings.

9

28. Plaintiffs state that USCIS ignored their requests between USCIS's issuance of acknowledgment letters and the commencement of this litigation. That is not true. Each request was reviewed and either (1) tasked to the Complex Staffing Unit for clarification or narrowing or to identify the appropriate USCIS program office(s) for a search for responsive records, or (2) directly tasked to the appropriate USCIS program office(s) for a search for responsive records.

29. Moreover, USCIS explained in their acknowledgement letters that there would be a delay in processing the requests, stating that "[a]lthough USCIS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances. Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request."[4] *See* Complaint, ECF No. 1, Exhibits. SIG staff also contacted Plaintiffs for multiple of their requests, seeking clarification or to assist Plaintiffs in narrowing unwieldy requests.

30. In sum, the USCIS FOIA Office generally, and SIG specifically, do not have a pattern or practice of refusing to timely respond to FOIA requests. The Agency generally and SIG specifically, have demonstrated reasonable progress in reducing FOIA backlogs. USCIS has treated all requesters fairly by abiding by its procedures and continuously implementing measures to streamline the FOIA process.

---

[4] In their Opposition, Plaintiffs allege that they were not informed regarding the processing track for four of their 89 FOIA requests. *See* Plaintiffs' Opposition, ECF No. 50 at p. 10. In fact, Plaintiffs were advised of the assigned track for all but two of the 89 requests. For those two requests, COW2021004053 & COW2021005079, a track was not initially assigned because USCIS sought clarification regarding the scope of these requests. Once litigation was filed, the 89 requests were designated to be handled as part of the instant litigation.

10

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed in Denver, North Carolina, on this 12th day of November 2024.

_____
James Baxley
Associate Center Director
Freedom of Information Act & Privacy Act Unit
USCIS National Records Center

11