UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RECLAIM THE RECORDS, ALEC FERRETTI, ALEX
CALZARETH, *and* RICH VENEZIA,

                                        Plaintiffs,

                    -v-

UNITED STATES CITIZENSHIP AND IMMIGRATION
SERVICES,

                                        Defendant.

---

23 Civ. 1997 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

        This lawsuit, under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"),

brings a single claim: of a systematic failure by the United States Citizenship and Immigration

Services ("USCIS" or the "agency"), a component of the Department of Homeland Security

("DHS"), to comply with FOIA requests. This "policy and practice" claim arises from 89 FOIA

requests to USCIS, each made by one of individual plaintiffs Alec Ferretti, Alex Calzareth, and

Rich Venezia ("Individual Plaintiffs"). The fourth plaintiff, Reclaim the Records ("Reclaim"), is

an organization on whose board Ferretti and Calzareth sit, but which has not itself made any of

the underlying FOIA requests. The records sought from USCIS concern an array of subjects,

including its (1) genealogy program, (2) immigration files, (3) communications with the National

Association for Public Health Statistics and Information Systems ("NAPHSIS"), a non-profit

trade organization that manages health records, and, most recently, (4) FOIA operations.

Plaintiffs allege that there have been "interminable" delays in USCIS's processing of FOIA

requests, and repeated failures to meet disclosure deadlines.

Several motions are pending.  Most centrally, these concern the viability of plaintiffs' "policy and practice" claim.  USCIS moves to dismiss plaintiffs' sole claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  It argues that, although FOIA provides a remedy in court for a failure to satisfy a valid FOIA request, it does not provide a remedy for a "policy and practice" of non-compliance with FOIA.  Insofar as the parties presented evidence on the motions to dismiss, USCIS alternatively moves for summary judgment against it under Rule 56. It argues that even if a pattern and practice claim under FOIA is conceptually viable, the facts alleged here, and adduced in the affidavits submitted by the parties, do not meet the demanding standards for such claims set by courts that have recognized such as potentially cognizable.  In other motions, USCIS challenges Reclaim's standing to sue, under Rule 12(b)(1), and seeks severance under Rule 21 of the case into its component FOIA requests, given the number and variety of these requests.

Plaintiffs, for their part, cross-move for summary judgment on their claim.

For the reasons that follow, the Court grants USCIS's motion to dismiss Reclaim for lack of standing.  As to the policy and practice claim of the Individual Plaintiffs, the Court finds that—assuming *arguendo* that such claims are cognizable under FOIA—the facts adduced here, viewed in the light most favorable to plaintiffs, fall short of establishing such a claim.  The Court accordingly grants USCIS's motion for summary judgment on this claim.  The Court denies the remaining motions as moot.

## I.    Background[1]

### A.    The Parties

#### 1.    The Individual Plaintiffs

The three Individual Plaintiffs are all "genealogists with recent immigrant ancestry" who "assist others in locating records relating to their immigrant ancestors."  Calzareth Decl. ¶ 9. Venezia founded Records Not Revenue, a non-partisan project that advocates against fee increases for DHS's Genealogy Program.  *Id.* ¶ 15 & n.4.  Ferretti and Calzareth are board members of Reclaim, Compl. ¶ 12, which is discussed below.

Over the past four years, the Individual Plaintiffs have submitted FOIA requests seeking greater transparency into USCIS's policies, *id.* ¶ 2, to assist them in serving "as a resource to inform the public about what to expect when dealing with USCIS," Calzareth Decl. ¶ 15.  In fiscal year ("FY") 2023, the three filed a total of approximately 697 FOIA requests and 256 FOIA appeals.  Baxley Decl. ¶ 40.  In FY 2024, the three filed another 735 FOIA requests. Baxley Supp. Decl. ¶ 6 n.1.

---

[1] The Court draws its account of the underlying facts from the parties' respective motions for summary judgment, including: USCIS's memorandum of law in support of its motion to dismiss, for summary judgment, or for severance, Dkt. 41 ("Def. Mem."); the declaration of James Baxley, in support of USCIS's motion, Dkt. 42 ("Baxley Decl."); plaintiffs' memorandum of law in opposition to that motion and in support of their cross-motion for summary judgment, Dkt. 50 ("Pls. Mem."); the declaration of Benjamin Meyers in support of plaintiffs' motion, Dkt. 48 ("Meyers Decl."); the declaration of Alex Calzareth also in support of the motion, Dkt. 49 ("Calzareth Decl."); USCIS's memorandum of law in opposition to plaintiffs' motion for summary judgment and reply in support of its motion, Dkt. 53 ("Def. Reply"); the supplemental declaration of James Baxley in support of USCIS's motion, Dkt. 54 ("Baxley Supp. Decl."); and plaintiffs' reply, Dkt. 55 ("Pls. Reply").

This action is based on 89 FOIA requests filed with USCIS by the Individual Plaintiffs between June 18, 2019 and January 7, 2023.  The content and submission dates of these requests are summarized as follows[2]:

| No. | Text of Request | Submit Date |
|---|---|---|
| 1. | Records Policy Manual regarding reconciliations and auditing procedures for missing A- and C-Files, "SOPs from the records holding facilities" and "data available relating to the finding of 'lost' files." | 6/18/19 |
| 2. | Case notes or emails regarding NRC2019538562; NRC2019538568; NRC2019538569; NRC2019538570; NRC2019538575; NRC2019538581; NRC2019538867; NRC2019538869; NRC2019538872; NRC2019538874; NRC2019538879; NRC2019620092; COW2019501665; APP2020000127. | 8/21/20 |
| 3. | FOIA Log of all FOIA requests processed in 2020. | 2/12/21 |
| 4. | FOIA Log of all FOIA Appeals processed in 2020. | 2/12/21 |
| 5. | All emails including attachments, beginning January 1, 2015 and ending February 12, 2021, sent to or received by Tammy Meckley (Associate Director, Immigration Records and Identity Services). | 2/12/21 |
| 6. | A list and/or screenshots of titles of all routine statistical reports generated from the Central Index System (CIS). | 2/23/21 |
| 7. | All records regarding efforts to rectify lost and missing A- and C-Files, and records of any reconciliation and auditing procedures. | 2/1/21 |
| 8. | Staff directory, showing all staff of the FOIA division of USCIS, including their name, email address, and position. | 3/10/21 |
| 9. | Official calendars of Jill Eggleston between 2018–21. | 3/10/21 |
| 10. | Reports detailing amounts of FOIA requests redirected to the Genealogy Program. If no reports exist, please provide copies of all redirection letters. | 3/10/21 |
| 11. | Procedure manuals and staff instructions regarding how to use the Electronic Verification of Vital Events or Electronic Verification of Vital Events - Fact of Death systems, which USCIS uses to determine if individuals are living or dead. | 3/13/21 |
| 12. | All email correspondence between and any email domains ending with @naphsis.org and @uscis.dhs.gov between 2015–20 containing the phrases "EVVE" or "Electronic Verification of Vital Events."  Please include attachments. | 3/13/21 |
| 13. | Please provide screenshots or extracts of official staff calendars for every entire day of scheduling which has the word "NAPHSIS."  Please do a global search of all employees between 2015–20. | 3/13/21 |
| 14. | All emails sent to, from, cc'd to, or cc'd by Donna.R.Ring@uscis.dhs.gov from 3/1/21–4/1/21.  Please include attachments. | 4/4/21 |

---

[2] The Individual Plaintiffs filed another 778 requests between June 24, 2019 and January 7, 2023. Baxley Decl. ¶ 58. As of August 9, 2024, USCIS had completed responses to approximately 342 of these within the statutory time frame.  *Id.*

| 15. | All emails sent to, from, cc'd to, or cc'd by Donna.R.Ring@uscis.dhs.gov from 1/1/20–4/1/21 which includes the keywords "FOIA" or "Freedom of Information." Please include attachments. | 4/4/21 |
|---|---|---|
| 16. | All emails sent to, from, cc'd to, or cc'd by Donna.R.Ring@uscis.dhs.gov from 1/1/20–4/1/21 which includes the keywords "PFile," "P-File," "P File," "P-Files," "P Files," or "PFiles." Please include attachments. | 4/4/21 |
| 17. | All emails sent to, from, cc'd to, or cc'd by Genealogy.USCIS@uscis.dhs.gov from 3/1/21–4/1/21 which includes the keywords "FOIA" or "Freedom of Information." Please include attachments. | 4/4/21 |
| 18. | All emails sent to, from, cc'd to, or cc'd by Genealogy.USCIS@uscis.dhs.gov from 1/1/21–4/1/21 which includes the keywords "dual citizenship" or "dualcitizenship." Please include attachments. | 4/4/21 |
| 19. | All emails sent to, from, cc'd to, or cc'd by foiapaquestions@uscis.dhs.gov from 1/1/20–4/1/21 which includes the keywords "Genealogy" Geneaology" or "Genealogy." Please include attachments. | 4/4/21 |
| 20. | All emails sent to, from, cc'd to, or cc'd by foiapaquestions@uscis.dhs.gov from 3/1/21–4/1/21 which includes the keywords "denial" or "rejection." Please include attachments. | 4/4/21 |
| 21. | All emails sent to, from, cc'd to, or cc'd by Jarrod.T.Panter@uscis.dhs.gov from 1/1/20–4/1/21 which includes the keywords "genealogy." Please include attachments. | 4/4/21 |
| 22. | List of people on all email distribution lists of which Donna.R.Ring@uscis.dhs.gov is a part. | 4/4/21 |
| 23. | List of people on all email distribution lists of which Jarrod.T.Panter@uscis.dhs.gov is a part. | 4/4/21 |
| 24. | Screenshots, reports, or extracts of email metadata for Donna.R.Ring@uscis.dhs.gov from 1/1/20–4/1/21 which show how many emails contain the keywords "FOIA" or "Freedom of information." | 4/13/21 |
| 25. | All emails between Andrew Smith and any email account with @nara.gov from 1/1/08–present. Please include emails that were sent to, from, cc'd to, or cc'd by Ms. Canard and include attachments. For the purposes of narrowing this request, please only search for emails which contain the phrase "AR2," "AR-2," "AR 2," OR "Alien Registration." | 5/3/21 |
| 26. | Inventory, spreadsheets, lists, finding aids, etc., documenting the different microfilm collections held by the USCIS History Library. | 6/1/21 |
| 27. | Inventory, spreadsheets, lists, finding aids, etc., documenting the different digital collections held by the USCIS History Library. | 6/1/21 |
| 28. | All email attachments (or emails including attachments–whichever is simpler) sent from the Genealogy.USCIS@uscis.dhs.gov inbox from January 1, 2015-present, from emails which contain the phrase "The attached letter includes the results to your index search request." | 6/24/21 |
| 29. | Emails sent by or to the USCIS General Counsel's Office, including attachments, between 1/1/15–present, that contain both of the following phrases: "legal authority" and "genealogy program." | 6/24/21 |

| 30. | All emails, including attachments, sent by and to Eunice Sohn, Brian Broderick, and Cassandra Perkins from 1/1/12–present, containing any of the following phrases: "C-Files at Suitland" OR "C Files at Suitland" or "CFiles at Suitland." | 6/24/21 |
|---|---|---|
| 31. | Database extract of all records retrieved from the Genealogy Program from 1/1/15–present, including type of record, file number, name, date of birth, and county of birth.  Please include all other fields that can be extracted. | 6/30/21 |
| 32. | Organizational chart of the Immigration Records and Identity Services Directorate showing all possible staff members. | 7/1/21 |
| 33. | Directory of all staff members of the Immigration Records and Identity Services Directorate, including all fields of data.  These may include but are not limited to name, position, email address, office phone number, cell phone number. | 7/1/21 |
| 34. | All emails, including attachments sent by or to Tammy Meckley from 1/1/19–the date of processing this request which contain the keyword "genealogy." | 7/1/21 |
| 35. | Maintenance contracts and agreements in place for scanners that are used by the staff that process FOIA requests. | 7/21/21 |
| 36. | (1) Manuals, (2) policies, and (3) directives, that govern the FOIA program's practices for redacting PII from FOIA responses. | 8/25/21 |
| 37. | (1) Manuals, (2) policies, and (3) directives, that govern the Press Office's policies for releasing information about naturalization/citizenship status of living individuals. | 8/25/21 |
| 38. | All emails, including attachments, sent to/from andrew.b.smith@uscis.dhs.gov from 1/1/19–the date of processing this request, which contain the any of the following phrases "PFile," "P File," "P-File," "PFiles," "P Files," or "P-Files." | 8/25/21 |
| 39. | File directory of the shared drive used by the Identity & Information Management Division to store internal documents. | 8/26/21 |
| 40. | (1) Manuals, (2) policies, and (3) directives, that govern the FOIA program's practice of redirecting requests for historical records to the Genealogy Program. | 8/26/21 |
| 41. | (1) Manuals, (2) policies, and (3) directives, that govern the FOIA program's practice of redirecting some FOIA requests to other agencies. | 8/26/21 |
| 42. | (1) Manuals, (2) policies, and (3) directives, that govern the FOIA program's practice of redacting personally identifying information from responsive records. | 8/26/21 |
| 43. | All invoices received by USCIS for storage space used in the Federal Records Center from 2019. | 9/7/21 |
| 44. | All emails sent between the domain @logicsoftusa.com and the following two USCIS employees: Dalva Huntley and Cassandra S. Perkins.  Please constrain this request to the date range from 1/1/17–present.  Please include attachments. | 9/26/21 |
| 45. | All memos, correspondence, and documentation created during the process by which IIMD and OIT (two USCIS programs) enhanced the MiDAS System or discussed enhancing the MiDAS system after the conclusion of the digitization done via Contract HSSCCG-17-C-00014. | 9/29/21 |
| 46. | Records in possession of the IIMD regarding the disposition of the deliverables received per Contract HSSCCG-17-C-00014 and the attached statement of work. | 9/29/21 |
| 47. | All emails sent to, from, cc'd to, or cc'd by any domain ending with "@uscis.dhs.gov" from 1/1/20–4/1/21 which includes the keywords "Alec" and "Ferretti."  Please include attachments. | 10/6/21 |

| 48. | Official calendars and schedules of Daniel H. Edgington from 1/1/17–date of processing of this request. | 10/20/21 |
|---|---|---|
| 49. | Log of all FOIA requests from the LIT queue, for 2015–date of processing. | 11/16/21 |
| 50. | Emails, memoranda of understanding, agreements, or records of the conversations held with the Italian consulate that are referenced in the attached letter. | 12/7/21 |
| 51. | All emails including attachments, between 2/13/21–12/13/21 sent to or received by Tammy Meckley, that contain any of the following words: genealogy, geneology, genealogist, genealogists, geneologist, geneologists, genealogical, geneological.  The search for Tammy Meckley's name or email address should include all of the following fields: "to," "from," "cc," and "bcc" fields. | 12/13/21 |
| 52. | Tammy Meckley's outlook calendar for 2/2/21. | 12/14/21 |
| 53. | An excel or csv file of the "CO Subject Files inventory spreadsheet" that is referenced on page 39 of contract HSSCCG-17-C-00014. | 12/14/21 |
| 54. | Record maintained by the USCIS finance office of refunds issued for Form G-1041 and for Form G-1041A from 1/1/08–present.  These include cumulative totals or record detailing instances of each refund. | 1/20/22 |
| 55. | Record of training the staff at the NRC has received from 1/1/18–present regarding how to use the MiDAS program. | 2/3/22 |
| 56. | Logs or reports of everyone who has logged into MIDAS (and when, if possible) from 1/1/18–present. | 2/3/22 |
| 57. | Reports of all individuals who currently have access to MIDAS. | 2/3/22 |
| 58. | All MIDAS training materials that have been created or used from 1/1/18–present. | 2/3/22 |
| 59. | All Mission statements in use from 2021–present for the Immigration Records and Identity Services Directorate. | 2/9/22 |
| 60. | All Mission statements in use from 2021–present for the National Records Center Division of the Immigration Records and Identity Services Directorate. | 2/9/22 |
| 61. | A copy of the most recent USCIS FOIA/PA Handbook plus any USCIS FOIA Information Bulletins or other updates conveyed via memo that have been issued since the date of that handbook. | 2/28/22 |
| 62. | A scan of the publication "Telegraphic Code of The Immigration And Naturalization Service. M-71. July 1, 1955." | 5/17/22 |
| 63. | All emails, including attachments, sent to or received by Tammy Meckley, from 2/1/22–6/15/22, that contain any of the following words: genealogy, geneology, genealogist, genealogists, geneologist, geneologists, genealogical. | 6/15/22 |
| 64. | All emails sent to or from Tammy Meckley from 6/16/22–9/18/22, that contain any of the following words: genealogy, geneology, genealogist, genealogists, geneologist, geneologists, genealogical. | 9/19/22 |
| 65. | Official employee calendars for Donna Ring from 1/1/19–present. | 9/26/22 |
| 66. | Official employee calendars for Tammy Meckley from 1/1/19–present. | 9/26/22 |
| 67. | Official employee calendars for Daniel Edgington from 10/20/21–present. | 9/26/22 |
| 68. | All Brosix messages sent by Tammy Meckley between 1/1/21–the date of processing which contain the any of the following phrases: P-File, P-Files, P File, P Files, Petition File, or Petition Files. | 10/8/22 |
| 69. | A scrape/extract of the CIS database, of all non-exempt fields pertaining to individuals who were born before 10/28/1922. | 10/28/22 |

| 70. | A scrape/extract of the MiDAS database, of all non-exempt fields pertaining to individuals who were born before 10/28/1922.  Note page two of the attached SF-115, in which it is stated that MiDAS has this capability, as the data is supposed to be sent to NARA every five years. | 10/28/22 |
|-----|---|---|
| 71. | A database export/scrape of the Flexoline Index from MiDAS, including all fields of data for all individuals born before 11/6/1922.  This database was exported in the past and a copy was given to the National Archives.  See the entry in the NARA Catalog: https://catalog.archives.gov/id/200294723. | 11/6/22 |
| 72. | All contracts signed with the United States Holocaust Memorial Museum regarding the FOREIGN ADDRESS AND OCCUPATION INDEX: https://www.ushmm.org/online/hsv/source_view.php?SourceId=33257. | 12/6/22 |
| 73. | FOIA Log from 1/1/00–12/31/07. | 12/13/22 |
| 74. | FOIA Log from 1/1/08–12/31/10. | 12/13/22 |
| 75. | FOIA Log from 1/1/19–Date of processing. | 12/13/22 |
| 76. | Log of all Genealogy Program requests, from 08–present. | 12/13/22 |
| 77. | All emails, including attachments, sent by or to Tammy Meckley from 1/1/20–date of processing which contain the word "historical." | 12/13/22 |
| 78. | Contract that established the compaction of A-Files project. | 1/5/23 |
| 79. | RAILS data dictionary. | 1/5/23 |
| 80. | Data dictionary for MiDAS. | 1/5/23 |
| 81. | MiDAS forms recognition contract. | 1/5/23 |
| 82. | Reports about the end of the compaction of A-Files project. | 1/5/23 |
| 83. | The final decision document to end the compaction of A-Files project.  This would have been written circa 2016. | 1/5/23 |
| 84. | All emails, including attachments sent by or to Tammy Meckley from 1/1/10–the date of processing this request which contain the keyword "compaction." | 1/5/23 |
| 85. | All emails, including attachments sent by or to Robert Cowan from 1/1/10–the date of processing this request which contain the keyword "Rafacs." | 1/5/23 |
| 86. | A spreadsheet exported from RAILS, preferably in csv or xlsx format, of every A-File numbered below 8 million that has been requested from 1/1/10–date of processing.  Please provide this file and include all disclosable columns of data, including but not limited to the organizational unit responsible party code, the date of the request, the date the file was retrieved, the date the file was reshelved, the accession number, and the box number. | 1/7/23 |
| 87. | A spreadsheet exported from RAILS, preferably in csv or xlsx format, of every A-File numbered above 8 million that has been requested from 1/1/10–date of processing.  Please provide this file and include all disclosable columns of data, including but not limited to the organizational unit responsible party code, the date of the request, the date the file was retrieved, the date the file was reshelved, the accession number, and the box number. | 1/7/23 |
| 88. | A spreadsheet exported from RAILS, preferably in csv or xlsx format, of every C-File numbered above 6.5 million that has been requested from 1/1/10–date of processing.  Please provide this file and include all disclosable columns of data, including but not limited to the organizational unit responsible party code, the date of the request, the date the file was retrieved, the date the file was reshelved, the accession number, and the box number. | 1/7/23 |

| 89. | A spreadsheet exported from RAILS, preferably in csv or xlsx format, of every C-File numbered below 6.5 million that has been requested from 1/1/10–date of processing.  Please provide this file and include all disclosable columns of data, including but not limited to the organizational unit responsible party code, the date of the request, the date the file was retrieved, the date the file was reshelved, the accession number, and the box number. | 1/7/23 |

*See* Compl. ¶¶ 14–387; Meyers Decl., Ex. 1 ("Pls. Spreadsheet").  The Individual Plaintiffs sort the 89 requests as largely seeking four categories of information: about USCIS's (1) Genealogy Program (25 requests), (2) records management relating to individual immigrants (3 requests), (3) interactions with NAPHSIS (3 requests), and (4) FOIA program operations and efficiency (23 requests).  Calzareth Decl. ¶ 17.  None of the 89 requests concerned alien files ("A files").[3]  *Id.*  All concerned non-alien files ("non-A files").  *Id.*

## 2.    Reclaim

Reclaim is a tax-exempt nonprofit organization devoted to acquiring genealogical and archival data from government sources and making it available to the public at no cost.  Compl. ¶ 12.  It identifies inaccessible records, files FOIA requests, and publishes online information it obtains, to enable public use.  *Id.*  It has not filed any FOIA requests in this litigation.  *See* Compl., Exs. 1-A–89-B; Def. Mem. at 1 n.1.

## 3.    USCIS

USCIS is an agency within the meaning of 5 U.S.C. §§ 551(1) and 552(f)(1).  Compl. ¶ 13.  Its FOIA branch, located at the National Records Center ("NRC") in Missouri, is responsible for handling all FOIA requests directed to USCIS.  Baxley Decl. ¶ 4.  The agency's FOIA branch consists of an operations branch and a policy branch.  *Id.*  The operations branch

---

[3] Alien files are records of an individual's immigration history.  Baxley Decl. ¶¶ 5–6 & n.1.  Non-alien files are records focused on agency policy records, communications, and other data.  *Id.*

consists of a customer service section and a records disclosure section.  *Id.*  The policy branch consists of a policy and training section, and, salient here, a significant interest group ("SIG") section.  *Id.*

The SIG section is generally responsible for handling FOIA requests for non A-files.  *Id.* ¶ 6.  It consists of 32 staff members and is divided into three teams—SIG operations, SIG FOIA processing, and SIG litigation.  *Id.* ¶ 7.  The first two focus on standard FOIA requests.  *Id.*  The third primarily handles FOIA requests that are the subjects of active litigation.  *Id.*

### B.    USCIS's Process for Responding to and Handling FOIA Requests for Non-Alien Files

When USCIS receives a FOIA request, the FOIA branch reviews it to determine whether it seeks A-file materials or non-A-file materials.  *Id.* ¶ 24.  If the latter, the FOIA Branch generally assigns the request to the SIG section for processing.  *Id.*

Once a request is assigned, FOIA staff determine its nature, scope, and compliance with the published rules.  *Id.* ¶ 25 (citing U.S.C. § 552(a)(3)(A)).  FOIA staff may contact requesters to narrow or clarify their requests.  *Id.* ¶ 9.  If the reviewer concludes the request does not contain errors or require clarification, USCIS sends the requester an acknowledgement letter, identifying the track to which the request has been assigned—"less complex requests seeking discrete items," or "more complex requests that typically involve sensitive records, larger volumes of pages and/or a longer review process," *id.* ¶ 16 (citing 6 C.F.R.§ 5.5(b))—and alerting the requester to the public website for tracking purposes, *id.* ¶ 26.  The requests are then sent to USCIS program offices that may have responsive records, which, in turn, conduct searches.  *Id.* ¶ 27–28.

If responsive records are located, they are uploaded into the FOIA processing system, and the case is moved into a processing queue.  *Id.* ¶ 30.  USCIS program officers generally process

10

the pending requests on a "first-in, first-out basis," and, upon completion, move the request to an approver queue. *Id.* ¶ 12. If the requester brings suit, the relevant FOIA request is reassigned to a SIG litigation team processor. *Id.* Processed records are then reviewed, and, if approved, produced. *Id.*

If a requester is not satisfied with USCIS's determination, he or she may appeal by using the agency's administrative appeal process. *Id.* ¶¶ 20, 38. The SIG section handles all SIG FOIA requests remanded on appeal for further action. *Id.* ¶ 20.

### C. USCIS's Handling of Plaintiffs' FOIA Requests Through the Filing of the Complaint

Between June 18, 2019 and January 7, 2023, the Individual Plaintiffs submitted the 89 FOIA requests at issue. *See* Compl. ¶¶ 2, 335–86. USCIS followed the FOIA process above for all of them. Baxley Decl. ¶ 49.

Specifically, each time it received a request from the Individual Plaintiffs, USCIS, between June 28, 2019 and January 10, 2023, *see* Compl. ¶¶ 16, 386, created a new case file for the request, and sent the requesting plaintiff an acknowledgement letter, informing him of the request's control number and the online tracking portal, Baxley Decl. ¶ 49. Each request was designated to the appropriate FOIA office for a search of responsive records. Baxley Decl. ¶ 50. As to plaintiffs' properly formulated requests—the vast majority—USCIS commenced searches and gave potentially responsive records to the FOIA Office or directly to the FOIA immigration records system ("FIRST") application. *Id.* ¶ 54. Of the 89 requests, six[4] required additional clarification, and at least four were deemed improper requests,[5] but, following such clarification

---

[4] *See* Compl. ¶¶ 41–43, 64–66, 71–73, 209–11, 223–25, 351 (requests 7, 12–13, 47, 50, 81).

[5] *See id.* ¶¶ 372–86 (requests 86–89); *see also* Baxley Decl. ¶ 52.

or reformulation, were then treated as above. *Id.* ¶ 50. The 89 FOIA requests were processed on a first-in, first-out basis. *Id.* ¶¶ 54–55.

As of the date of filing the Complaint, USCIS had acknowledged receipt of each FOIA request. Baxley Decl. ¶ 49. It had not denied any, but it had not produced any responsive records. *See id.* ¶¶ 389–95. Plaintiffs did not file lawsuits concerning their individual requests. Plaintiffs instead opted, on March 8, 2023, to file this litigation challenging an alleged "policy and practice" by USCIS of failing to timely respond to FOIA requests. *See* Compl. ¶ 393. As of that date, the requests had been pending from 930 working days (request one) to 41 working days (requests 86–89), with an average wait of 311 days. *See id.* ¶¶ 14–387; *id.*, Exs. 1-A–89-B; Pls. Spreadsheet.

### D. This Litigation

#### 1. Overview of Plaintiffs' "Policy and Practice" Claim

The Complaint, filed March 8, 2023, Dkt. 1, alleges that, as of that date, USCIS had failed to produce records in response to any of the 89 requests and had missed FOIA's mandatory response deadline. *Id.* ¶ 3. It alleges that USCIS engaged in a systematic policy of delayed disclosure, violating its duty under FOIA to provide timely access to public records. *Id.* ¶¶ 4, 393. The Complaint represents that, before suing, the Individual Plaintiffs had exhausted their administrative remedies as required by 5 U.S.C. § 552(a)(6)(C)(i), either by waiting for the agency's deadline to respond to pass or by complying with USCIS's requests for clarification. *Id.* ¶¶ 11, 392. The Complaint seeks, *inter alia*, an order compelling USCIS to produce the requested records in their entirety and comply with the FOIA timelines going forward. *Id.* at 47.

#### 2. History of the Litigation

In the 15 months after the filing of the Complaint, the parties engaged in negotiations aimed at resolving the underlying FOIA requests and this lawsuit. *See* Dkts. 8–22, 25–26,

28–33.  On June 18, 2024, after 11 extensions, the parties filed a joint letter proposing a briefing schedule for USCIS's motion to dismiss.  Dkt. 34.  On July 22, 2024, after plaintiffs confirmed that they were waiving their right to amend the Complaint once as a matter of course under Rule 15, *see* Dkts. 35, 37, 39, the Court so-ordered the proposed schedule, Dkt. 38.

On August 9, 2024, USCIS moved to dismiss and for summary judgment.  Dkt. 40. USCIS principally argues that plaintiffs' policy and practice claim is not cognizable under FOIA, and should be dismissed under Rule 12(b)(1), but, even if such a claim were potentially viable, the Complaint does not plausibly allege such, warranting dismissal under Rules 12(b)(6) and 56. *Id.*  USCIS alternatively moved for severance.  *Id.*  It argues that plaintiffs have premised their policy and practice claim on largely unrelated FOIA requests, which are appropriately addressed independently.  *Id.*  In support, USCIS filed a memorandum of law, Dkt. 41, and a declaration from James Baxley, associate center director and chief FOIA officer of NRC's freedom of information and privacy act unit, Dkt. 42.  It set out facts regarding USCIS's FOIA procedures and workload, Dkt. 42, and attached an exhibit, Dkt. 42-1.  On October 4, 2024, plaintiffs filed a cross-motion for summary judgment, Dkt. 47, a memorandum of law in support and in opposition to USCIS's motion, Dkt. 50, a declaration from Calzareth which set out facts concerning the Individual Plaintiffs' interest in and experience with FOIA requests to USCIS, and a declaration from Benjamin Meyers, Esq., plaintiffs' counsel, concerning USCIS's backlog, each with annexed exhibits, Dkts. 48–49.  On November 14, 2024, after an extension, USCIS filed a reply, Dkt. 53, and a supplemental declaration from Baxley, detailing SIG's planned improvements and updating the status of plaintiffs' requests, Dkt. 54.  On December 6, 2024, plaintiffs replied.  Dkt. 55.

### 3.      Status of and Progress on Plaintiffs' Pending FOIA Requests During This Litigation

As of the filing of the Complaint, USCIS, although having acknowledged receipt of each of the 89 FOIA requests, had not produced any records. *See* Compl. ¶¶ 389–95. By August 9, 2024, USCIS had completed its responses to 41 of the requests. Baxley Decl. ¶ 57. By October 4, 2024, it had completed its responses of 51 of the requests. *See* Pls. Spreadsheet. By November 14, 2024, USCIS had completed its responses to 55 of the requests, and had made 65 productions of responsive records. Baxley Supp. Decl. ¶ 22.

### 4.      Facts Developed as to USCIS's FOIA Backlog and Improvements

The parties' factual submissions on the pending motions—particularly the declarations from USCIS—have explicated the circumstances surrounding USCIS's review of the requests at issue.

In recent years, USCIS has experienced a significant rise in FOIA requests. Between FY 2020 and FY 2022, the number of FOIA requests to the agency rose approximately 55%, and between FY 2022 and FY 2023, it rose another 30%. Baxley Decl. ¶ 17. Specifically, in FY 2020, USCIS received 195,930 FOIA requests, which comprised almost 50% of the 397,671 requests made to DHS and nearly 25% of the 790,688 requests to the entire federal government. *Id.* In FY 2021, the USCIS received 235,210 requests. *Id.* In FY 2022, the agency received 302,689 requests, the latter of which comprised approximately 56% of the 539,807 requests made to DHS and more than 33% of all requests to the federal government. *Id.* In FY 2023, USCIS received 391,696 FOIA requests. *Id.* ¶ 18. That approximately doubled the number of requests USCIS had received in FY 2020, and comprised 33% of the FY 2023 requests to the entire federal government. *Id.*

USCIS represents that it has tried to keep up with the increased volume of FOIA requests and to work through its backlog.  *Id.* ¶ 19.  In FY 2020, USCIS processed 191,114 requests and reported a year-end backlog of 20,344 requests.  *Id.*  In FY 2021, USCIS processed 251,289 requests and reported a year-end backlog of 1,599 requests.  *Id.*  In FY 2022, USCIS processed 299,690 requests and reported a year-end backlog of 4,433 requests.  *Id.*  In FY 2023, USCIS processed 384,311 requests and reported a year-end backlog of 2,137 requests.  *Id.*

According to USCIS, it "makes every effort to respond to FOIA requests and appeals within the statutory timeframes set forth in the FOIA statute."  *Id.* ¶ 38 (citing 5 U.S.C. §§ 552(a)(6)(A)–(B)).  The agency represents that its "substantial and increasing FOIA and appeal caseload, litigation burdens, the complexity of FOIA requests[,] and the large volume of records sought by FOIA requesters result[] in delays, notwithstanding USCIS's concerted efforts to process all FOIA requests in a timely fashion."  *Id.* ¶ 39.  As evidence of its efforts to address the problem, USCIS points to several features of the review process described above: its multi-track system, specialized units, and first-in, first-out approach to processing.  *Id.* ¶ 41.

USCIS further represents that it has implemented short- and long-term measures to facilitate efficient FOIA processing.  *Id.* ¶ 42.  Since January 2022, the agency has hired an additional 83 staff members to support its FOIA program.  *Id.*  It has also authorized overtime pay for FOIA staff and other federal employees who have been cross-trained to assist the FOIA program.  *Id.* ¶ 43.  USCIS has also entered into third-party contracts to supplement its staff in completing FOIA responses; its current contract is in effect through March 29, 2025.  *Id.* ¶ 44.  It has also dedicated resources to FOIA-related technology, such as FIRST, and to its e-discovery platform, Veritas.  *Id.* ¶¶ 45–47.

## II.    USCIS's Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Court first considers USCIS's arguments for dismissal of plaintiff Reclaim's claims under Rule 12(b)(1) on the ground that Reclaim, unlike the Individual Plaintiffs, lacks standing. For the reasons below, the Court grants that motion.

### A.    Applicable Legal Standards

A court must dismiss a claim for lack of subject matter jurisdiction under 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true," *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (citation omitted), but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits.  *See Makarova*, 201 F.3d at 113.

### B.    Discussion

USCIS argues that, because Reclaim did not submit any of the 89 FOIA requests at issue, it does not have standing to bring suit, and thus its claims must be dismissed for lack of subject matter jurisdiction.  Def. Mem. at 1 n.1.  Plaintiffs do not dispute that Reclaim did not submit

16

any of the requests in this litigation.  Nor could they.  Reclaim's connection to this case is merely

that it is an entity on whose board two Individual Plaintiffs sit.

      USCIS is correct.  FOIA "provides a cause of action only to a requester who has filed a

FOIA request."  *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 667 (S.D.N.Y. 2010) (citing

*McDonnell v. United States*, 4 F.3d 1227, 1237 (3d Cir. 1993)); *see Zivotofsky ex rel. Ari Z. v.*

*Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006) ("Anyone whose request for specific

information has been denied has standing to bring an action[.]").  Reclaim thus lacks standing to

seek relief under FOIA.  The Court accordingly grants USCIS's motion to dismiss under Rule

12(b)(1) for lack of subject matter jurisdiction.  *See Torres v. Dep't of Homeland Sec.*, No. 9 Civ.

8640, 2010 WL 4608431, at *4 (S.D.N.Y. Nov. 2, 2010), *aff'd*, 441 F. App'x 812 (2d Cir. 2011)

(collecting cases); *McKevitt*, 689 F. Supp. 2d at 667–69 (dismissing complaint, without

prejudice, for lack of subject matter jurisdiction where "the FOIA administrative process was

never used").

## III.    The USCIS's Motion for Summary Judgment

      Because USCIS, in challenging plaintiffs' policy and practice claim, has put in the record

evidence outside the pleadings and moved alternatively for summary judgment under Rule 56—

and because plaintiffs have likewise offered evidence outside the pleadings and moved for

summary judgment—the Court elects to resolve USCIS's challenge to this claim as a motion for

summary judgment.  *See, e.g.*, *Donoghue v. Tannenbaum*, No. 21 Civ. 4770 (PAE), 2021 WL

4864587, at *1 (S.D.N.Y. Oct. 15, 2021) (converting Rule 12(b)(6) motion into summary

judgment motion); *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 430

(S.D.N.Y. 2016) (similar); *see also Pantoja v. Enciso*, No. 18 Civ. 11842 (PAE) (GWG), 2020

WL 70919, at *1 (S.D.N.Y. Jan. 6, 2020) (adopting report and recommendation that converted Rule 12(b)(6) motion into summary judgment motion).[6]

This course would have been in order even had the parties not formally crossed-moved for summary judgment. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." "The essential inquiry in determining whether it is appropriate to convert a motion [to dismiss] into a motion for summary judgment is 'whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Costor v. Sanders*, No. 7 Civ. 11311, 2009 WL 1834374, at *2 (S.D.N.Y. June 16, 2009) (quoting *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir. 1990)). "Ordinarily, formal notice is not required where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the

---

[6] To the extent USCIS had moved to dismiss this claim under both Rules 12(b)(1) and 12(b)(6), the Court's judgment is that the analysis would properly have been under 12(b)(6), as the motion predominantly concerns whether the facts alleged in the Complaint state a claim under FOIA. *See Henry v. Comm'r of Soc. Sec.*, 9 Civ. 206, 2010 WL 11523750, at *3 (D. Vt. July 6, 2010) ("Generally, courts have discretion to treat a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as a Rule 12(b)(6) motion to dismiss for failure to state a claim."); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *as amended* (Apr. 16, 2003); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996) ("In most circumstances, it makes little practical difference whether the district court correctly labels its dismissal of an action as one for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6)."); *Betty Jean B. on behalf of L.J.B. v. Kijakazi*, No. 21 Civ. 125, 2022 WL 873827, at *4 (N.D.N.Y. Mar. 24, 2022) (construing Rule 12(b)(1) motion as one brought pursuant to Rule 12(b)(6)).

pleadings.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Villante v. Dep't of Corr. of N.Y.*, 786 F.2d 516, 521 (2d Cir. 1986)).

Here, there was ample such notice—the parties each affirmatively pursued summary judgment. On August 8, 2024, USCIS filed its alternative motions to dismiss or for summary judgment, Dkt. 40, and submitted material outside the pleadings, including a declaration and an attachment, *see* Baxley Decl., Ex. A. On October 4, 2024, after two extensions, plaintiffs cross-moved for summary judgment, and likewise submitted material outside the pleadings, including two declarations and several exhibits. Dkts. 47–49. And plaintiffs have not argued a lack of notice of USCIS's motion for summary judgment. On the contrary, to meet that claim and secure summary judgment in their favor, plaintiffs augmented the record, adding materials as to their pending FOIA requests and as to FOIA cases brought by others, in this District and the Northern District of California. *See* Meyers Decl., Exs. 1–4. Plaintiffs instead oppose summary judgment (and dismissal) on the merits.

Accordingly, the Court resolves USCIS's challenge to the policy and practice claim by applying the standards for summary judgment under Rule 56. *See Navigators Ins. Co. v. Dep't of Just.*, 155 F. Supp. 3d 157, 168, 174 & n.15 (D. Conn. 2016) (*sua sponte* converting agency opposition into motion for summary judgment and granting it on pattern and policy claim).

### A.    Applicable Legal Standards

#### 1.    Summary Judgment Motions

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 US. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted)

### 2.    FOIA

FOIA governs public access to information held by the federal government. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). However, "Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information, and therefore provided the specific exemptions under which disclosure could be refused." *Id.* (citation omitted). "Recognizing past abuses, Congress sought to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *Id.* (citation omitted).

20

"FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). "These exemptions are explicitly made exclusive, and must be narrowly construed." *Id.* (citation omitted). "The agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009). Courts review the adequacy of the agency's justifications de novo. *Id.* Even where portions of a responsive record are properly exempt, the agency must "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii)(II); *see FBI v. Abramson*, 456 U.S. 615, 626 (1982).

Summary judgment is the usual means by which a court resolves a challenge to a government agency's FOIA response. *See, e.g.*, *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994); *Johnson v. CIA*, No. 17 Civ. 1928, 2018 WL 833940, at *2 (S.D.N.Y. Jan. 30, 2018). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner*, 592 F.3d at 73 (citation omitted). An agency's affidavits in support of its nondisclosure are "accorded a presumption of good faith." *Carney*, 19 F.3d at 812 (citation omitted). However, "conclusory affidavits that merely recite statutory standards, or are overly vague or sweeping will not . . . carry the government's burden." *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner*, 592 F.3d at 73 (citation omitted). Courts are to take a more "deferential posture in FOIA cases regarding the uniquely executive purview of national

security" and accord "substantial weight" to agencies' declarations predicting harm to national security. *Id.* at 73, 76 (citation omitted); *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) (where agency affidavits appear sufficient, "the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency").

**B.    Discussion**

USCIS seeks summary judgment on plaintiffs' policy and practice claim, claiming that "there is no genuine dispute that the Agency has not intentionally evaded its FOIA obligations[,] but rather has made good faith efforts to comply with FOIA." Def. Mem. at 17. Plaintiffs argue that summary judgment should be denied—and that their cross-motion should be granted—because, in connection with all 89 requests underlying their claim, USCIS failed to timely respond to these requests. Pls. Mem. at 15.

The Court grants summary judgment for USCIS and denies plaintiffs' cross-motion. Assuming *arguendo* that policy and practice claims can be viable under FOIA, the evidence adduced here does not reflect deliberate flouting of FOIA obligations, as would be necessary under the precedents recognizing such a claim. Instead, the assembled evidence reflects the more prosaic reality of a resource-limited agency coping with a rising flood of incoming FOIA requests and missing deadlines as a result, while steadily working through the backlog. Regrettable though that situation may be, it does not support a policy and practice claim.

**1.    Overview of Policy and Practice Claims**

FOIA requesters have pursued policy and practice claims in a series of cases which alleged that federal agencies were systematically circumventing FOIA requirements, including sometimes by invoking legally specious rationales. These claims have challenged ongoing

22

patterns of willful agency behavior claimed to impede the rights of requesters under FOIA to obtain timely access to covered information.

FOIA requires that executive agencies, upon proper request, produce records to the public or provide a justification why the requested materials are exempt from production. *See* 5 U.S.C. § 552. "Each agency, upon any request for records . . . shall . . . determine within 20 [business] days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor[.]" *Id.* § 552(a)(6)(A)(i). However, recognizing the practical difficulty of attaining strict compliance with the 20-day requirement, courts have permitted FOIA requests to be processed in good faith on a longer timetable, on a first-in, first-out basis, subject to showings of exceptional need. *See, e.g.*, *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976) ("The good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act."); *Bloomberg L.P. v. FDA*, 500 F. Supp. 2d 371, 376 (S.D.N.Y. 2007) ("While a general showing of an agency processing FOIA requests on a first-in, first-out basis, coupled with a multitrack processing system may be consistent with due diligence in some instances, this determination should not be automatic, and fails if extraordinary need is demonstrated.").

When disputes over the content or timing of an agency's response to requests have reached the point of litigation, such litigation has commonly centered on denials by agencies of individual records requests. *See, e.g.*, *Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161, 162 (S.D.N.Y. 2019). However, as courts have recognized, from time to time, agencies have

exploited the Article III case-or-controversy requirement that prevents federal courts from issuing advisory opinions, *see Chafin v. Chafin*, 568 U.S. 165, 171–72 (2013); U.S. Const. art. III, § 2, by snubbing FOIA requests and forcing the requester to file suit, and only then producing the responsive materials. By mooting the lawsuits, such belated productions effectively disabled courts from taking action to respond to the agencies' assertedly systemic disregard for FOIA obligations. *See, e.g.*, *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) (noting that "the release of requested documents to a plaintiff renders its FOIA suit moot 'with respect to those documents,'" but not as to "an agency *policy or practice*" (emphasis in original) (citation omitted)); *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 773 (D.C. Cir. 2018) (noting that agency had mooted plaintiff's five prior suits by belatedly producing, after the commencement of litigation, the responsive records).

In response to these circumstances, the United States Court of Appeals for the District of Columbia Circuit, the most frequent appellate forum in FOIA cases, has in three cases upheld claims that an agency had adopted a policy or practice that systematically frustrated FOIA compliance. The cases involved, respectively, showings of showings of blanket denials of FOIA requests, *Payne Enters., Inc. v. United States*, 837 F.2d 486, 490–91 (D.C. Cir. 1988), egregious misapplication of FOIA exemptions, *Newport Aeronautical Sales*, *supra*, 684 F.3d 160 at 164, and unjustified chronic delays, *Judicial Watch*, *supra*, 895 F.3d at 779–80.

In *Payne*, the agency (the U.S. Air Force) had repeatedly denied the plaintiff's FOIA requests without thorough explanation, forcing the requester to keep filing appeals in pursuit of the information it sought. 837 F.2d at 487–90. The agency did so even after its Secretary had ordered it immediately to disclose the records at issue. *Id.* The D.C. Circuit held that although the requester had ultimately received the individual documents as a result of multiple appeals,

the agency was "merely . . . refraining from the conduct of which [the requester] has complained while the case is pending" and was "free to return to [its] old ways." *Id.* at 491 (citation omitted). Accordingly, the D.C. Circuit held that the agency-wide practice of unjustified blanket denials undermined FOIA and entitled the plaintiff to declaratory, and possibly injunctive, relief, notwithstanding that the underlying FOIA requests had by then been met. *Id.* at 494–95. Provided the plaintiff can show a risk of future harm, the Circuit held, the fact that "a party may have obtained relief as to a *specific request* under the FOIA . . . will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* at 491 (emphasis in original); *see also Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 228 (D.D.C. 2011) (construing *Payne* to authorize "declaratory or injunctive relief under FOIA even when a plaintiff's specific claim regarding a FOIA request is moot because the requested documents have been released").

In *Newport*, which also involved FOIA requests to the Air Force, the D.C. Circuit, applying *Payne*, sustained a policy or practice claim, and rejected the agency's claim of technical FOIA compliance. 684 F.3d at 164. The Air Force had repeatedly yet baselessly invoked a FOIA exemption as a reason to deny requests for technical data, forcing the requester, a government contractor, to pursue the information through different internal means that required the contractor to disclose information it often could not provide. *Id.* at 163–64. The D.C. Circuit held that the Air Force's belated disclosure of requested records after the contractor filed suit did not moot the policy or practice claim, in part because, the record reflected, the agency had "no intention of abandoning" its practice of wrongly invoking a FOIA exemption to deny requests. *Id.* at 164. The D.C. Circuit held such conduct supported a policy or practice claim. *Id.*

Most recently, in *Judicial Watch*, the D.C. Circuit held that "a plaintiff states a plausible policy or practice claim under *Payne* by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements." 895 F.3d at 780. The plaintiff there, between 2012 and 2014, had filed five suits in federal court after the agency (the U.S. Secret Service) had failed to make available requested records. *Id.* at 773. In response to each lawsuit, the agency had produced the non-exempt records, mooting the litigation. *Id.* Eventually, after the Secret Service had acknowledged receipt of but failed to response to additional FOIA requests, the plaintiff filed a lawsuit that added a policy-or-practice claim and sought injunctive relief. *Id.* at 773–74. The D.C. Circuit granted such relief. *Id.* at 774. It held that the agency's conduct in response to the FOIA requests, which had forced the plaintiff "to file six lawsuits to obtain requested non-exempt records . . . sufficed to state a plausible claim that the agency's practice was to utilize delay to flaunt FOIA's procedural requirements," particularly given the capacity of the agency to continue to "moot the litigation and escape judicial review of its compliance with FOIA." *Id.* at 782.

The Ninth Circuit has followed the D.C. Circuit in recognizing such a claim. *See Mayock v. Nelson*, 938 F.2d 1006, 1008 (9th Cir. 1991) (recognizing policy or practice claim for unreasonable delay in addressing FOIA claims); *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1104–06 (9th Cir. 2016) (same); *Long v. IRS*, 693 F.2d 907, 909–10 (9th Cir. 1982) (same). It, like the D.C. Circuit, has anchored this holding in its reading of congressional intent. As the D.C. Circuit, drawing on a Ninth Circuit decision, has put the point: "Congress did not intend for . . . any . . . agency[] to use the FOIA offensively to hinder the release of non-exempt documents. . . . These unreasonable delays in disclosing non-exempt documents violate the intent

26

and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Payne*, 837 F.2d at 494 (quoting *Long*, 693 F.2d at 910); *cf.* H.R. Rep. No. 93-876, at 6271 (1974) (House Report on FOIA, noting that "information is often useful only if it is timely" and that "excessive delay by the agency in its response is often tantamount to denial").

Outside the D.C. and Ninth Circuits, however, this doctrine is not as firmly established. The Supreme Court has not spoken to the question, although it has acknowledged that a FOIA claim may proceed "[e]ven when an agency does not deny a FOIA request outright" if the requesting party can "claim 'improper' withholding by alleging that the agency has responded in an inadequate manner." *U.S. Dep't of Just. v. Tax Analysts,* 492 U.S. 136, 151 n.12 (1989). The Fourth and Tenth Circuits have assumed *arguendo* that such claims are cognizable, without definitely resolving the question. *See Empower Oversight Whistleblowers & Rsch. v. Nat'l Insts. of Health*, 122 F.4th 92, 102 (4th Cir. 2024) ("We have not had occasion to determine whether to recognize a policy or practice claim in this Circuit and this case does not present the proper vehicle to do so. Here, Appellant failed to allege a policy or practice claim, and there is nothing in the facts of this case to indicate a willful and repeated violation of FOIA deadlines."); *Liverman v. Off. of Inspector Gen.*, 139 F. App'x 942, 945 (10th Cir. 2005) (similar).

Apposite here, the Second Circuit has noted that other courts have recognized policy and practice claims, while expressing some skepticism about their viability. In a 2009 summary order upholding summary judgment in favor of an agency, and the denial of declaratory or injunctive relief against the agency, on a claim of "an alleged pattern or practice of behavior," the Circuit noted that it has "not yet recognized or articulated the inquiry relevant to a pattern or practice claim in the FOIA context," while acknowledging that "[o]ther circuits and district courts have . . . concluded that a plaintiff may bring an independent claim alleging a pattern or

practice of violating the FOIA." *Pietrangelo v. U.S. Army*, 334 F. App'x 358, 360 (2d Cir. 2009).  In a 2023 published decision, the Circuit expressed doubt on whether FOIA claims are cognizable where plaintiffs have not sought adjudication of "claims over particular documents" or "the disclosure of documents improperly withheld," but merely an "order [that] the agencies . . . comply with the FOIA."  *Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, 60 F.4th 16, 22 (2d Cir. 2023) ("ASPCA") (upholding judgment on the pleadings to agency on pattern and practice claim).

District courts in this Circuit have adjudicated such claims, with several concluding that FOIA permits such claims, *see, e.g.*, *Am. Soc'y for Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, No. 19 Civ. 3112, 2021 WL 1163627, at *14 (S.D.N.Y. Mar. 25, 2021) ("This Court agrees with the D.C. Circuit's analysis and joins the other district courts in this Circuit in recognizing that FOIA policy and practice claims are justiciable.") (collecting cases), *aff'd*, 60 F.4th 16, and others assuming so *arguendo*, *see, e.g.*, *Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 66–67 (S.D.N.Y. 2018), *aff'd*, 959 F.3d 72 (2d Cir. 2020) ("declin[ing] to exercise its discretion to entertain a declaratory judgment action" for pattern or practice claim); *Navigators Ins.*, 155 F. Supp. 3d at 168 (similar); *Pietrangelo, II v. U.S. Dep't of the Army*, No. 6 Civ. 170, 2007 WL 1874190, at *11 (D. Vt. June 27, 2007), *aff'd*, 334 F. App'x 358 (2d Cir. 2009) (similar).  None, however, has ultimately upheld such a claim.  *See, e.g.*, *Panjiva, Inc. v. U.S. Customs & Border Prot.*, 342 F. Supp. 3d 481, 496 (S.D.N.Y. 2018), *aff'd*, 975 F.3d 171 (2d Cir. 2020) (collecting cases); *Whitaker v. Dep't of Com.*, No. 17 Civ. 192, 2017 WL 6547880, at *6 (D. Vt. Dec. 20, 2017), *aff'd*, 970 F.3d 200 (2d Cir. 2020) (granting agency summary judgment on pattern or practice claim based on agency declarations); *New York Times*

*Co. v. F.B.I.*, 822 F. Supp. 2d 426, 431 (S.D.N.Y. 2011) (denying summary judgment to plaintiff on pattern or practice claim).[7]

### 2.    Analysis

The Court here, following the approach of other courts in this Circuit, assumes *arguendo* that policy or practice claims under FOIA are cognizable. *See, e.g.*, *Doyle*, 331 F. Supp. at 66–67; *Navigators Ins.*, 155 F. Supp. 3d at 168; *Pietrangelo, II*, 2007 WL 1874190, at *11. The facts adduced here, however, fall short of making out such a claim, under the demanding standards set by the assembled case law, including in the D.C. Circuit, where claims of this nature were first recognized.

As the D.C. Circuit has held, to establish a FOIA policy or practice claim, a plaintiff must show that "(1) the agency in question has adopted, endorsed, or implemented a policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA'; and (2) the plaintiff will 'suffer continuing injury due to this practice.'" *Nat'l Sec. Couns. v. CIA.*, 898 F. Supp. 2d 233, 253 (D.D.C. 2012) (citing *Payne*, 837 F.2d at 491), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020). The agency's "refusal to supply information" must" evidence[] a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials." *Payne*, 837 F.2d at 491.

Each of the three cases in which the D.C. Circuit has sustained as plausible pleadings to this effect—none reached the summary stage—alleged willfully disobedient conduct and thus the likelihood of its repetition. In *Payne*, the Air Force had repeatedly affirmatively denied the plaintiff's FOIA request, without a serious explanation, and had done so in the face of an order

---

[7] *But cf. Int'l Refugee Assistance Project, Inc. v. U.S. Citizenship & Immigr. Servs.*, 551 F. Supp. 3d 136, 166 (S.D.N.Y. 2021) (denying motion to dismiss policy and practice claim).

from the Secretary of the Air Force to produce the records at issue. *See id.* In *Newport*, the

agency, again the Air Force, repeatedly, and wrongly, invoked a FOIA exemption, forcing the

requester to pursue the records by other means, only to capitulate upon the filing of a lawsuit and

produce the records. 684 F.3d at 163–64. And in *Judicial Watch*, there were prolonged delays

which the agency, the Secret Service, repeatedly failed to explain. 895 F.3d at 773–74. Not until

the requester filed suit—as it was forced to do five times—did the agency produce the records.

*Id.* Such led the D.C. Circuit to find that the agency was deploying a strategy "to utilize delay to

flaunt FOIA's procedural requirements." *Id.* at 780.

    As the D.C. and Ninth Circuits have emphasized, however, a policy and practice claim

requires more than a showing of delay and noncompliance. As the D.C. Circuit put the point in

*Judicial Watch*: "[N]ot all agency delay or other failure to comply with FOIA's procedural

requirements will warrant judicial intervention, much less injunctive relief" prompted by a policy

and practice claim. *Id.* at 782. The Ninth Circuit, similarly, in *Mayock*, remanded to inquire

whether the delay in production resulted from increasing FOIA workloads, thus giving rise to

"exceptional circumstances" that justified the agency's failure, in spite of due diligence, to

respond within the statutory time frame. 938 F.2d at 1007–08.

    That doctrine follows from the FOIA's text itself, which provides for response-time

extensions where the agency shows that "exceptional circumstances exist" and "demonstrates

reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C). The

exceptional circumstances standard has been found established when an agency "is deluged with

a volume of requests for information vastly in excess of that anticipated by Congress, when the

existing resources are inadequate to deal with the volume of such requests within the time limits

of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in

processing the requests." *Open Am.*, 547 F.2d at 616 (quoting 5 U.S.C. § 552(a)(6)(C)).  As the

D.C. Circuit has noted, however, this standard is not met where the delays stem from "a

predictable agency workload of requests . . . unless the agency demonstrates reasonable progress

in reducing its backlog of pending requests."  5 U.S.C. § 552(a)(6)(C)(ii).  "Reasonable

progress," in turn, is assessed by the number of requests for information, the number of appeals,

the agency's commitment to its FOIA obligations, and the agency's budget allocated by

Congress.  *See Judicial Watch*, 895 F.3d at 783–83.

     The case law applying these standards has been helpfully synthesized as follows: "When

agencies are making good-faith efforts and exercising due diligence in processing requests and

appeals on a first-in, first-out basis, courts generally find that exceptional circumstances excuse

any delays."  *Ctr. For Biological Diversity v. Gutierrez*, 451 F. Supp. 2d 57, 70 (D.D.C. 2006)

(collecting cases).  In *Gutierrez*, for example, the district court rejected a policy and practice

claim based on an agency's belated responses where the agency "was reasonably diligent in

handling the [plaintiff's] requests, given the number of FOIA requests received in 2005 (213),

the number being processed at the same time . . . (24), and its repeated release of responsive

documents as they were identified."  *Id.* at 70.  Similarly, in *Democracy Forward Foundation*, a

case that did not bring a policy and practice claim but merely challenged noncompliance with a

pending request, the district court found that an agency's delay in producing responsive

documents had a reasonable basis recognized by the law, namely the "substantial increase in

FOIA requests that Congress could not have reasonably anticipated."  *Democracy Forward

Found. v. Dep't of Just.*, 354 F. Supp. 3d 55, 61 (D.D.C. 2018); *see also Nat'l Sec. Archive v.

U.S. S.E.C.*, 770 F. Supp. 2d 6, 9 (D.D.C. 2011) (finding 300% increase in FOIA requests over a

seven-year period to constitute "exceptional circumstances").

Measured against these standards, the facts established here do not rise to the level of supporting a policy and practice claim, assuming *arguendo* such are viable. The Complaint alleged the adoption by USCIS of a policy of failing to abide by FOIA, and in particular, "regularly and repeatedly failing or refusing to respond to Plaintiffs' requests . . . [for] records within the time period required by FOIA." Compl. ¶ 393. And factually, it is undisputed that USCIS did not respond to any of plaintiffs' 89 requests within the FOIA timetable or by the date of the Complaint, and that, well after this litigation began, a meaningful subset of plaintiffs' 89 requests remained outstanding. *See* Baxley Supp. Decl. ¶ 22 (as of November 14, 2024, 34 requests were pending). It is also undisputed that USCIS continues to have a backlog of pending FOIA requests, *see* Baxley Decl. ¶ 19, such that plaintiffs, as "frequent requesters" to the agency, can plausibly expect that future requests will be processed outside the FOIA timetable, *id.* ¶ 40.

The evidence adduced here, however, falls short of establishing any policy or practice by USCIS of willfully disregarding its FOIA obligations, of recalcitrance, of a lack of due diligence, of bad faith, or of a willful failure to explain belated productions, so as to warrant injunctive relief. It instead reflects the quotidian reality of an agency contending with, and working through, a flood of FOIA requests that have crested anew each year. This is thus not a case of "unexplained agency delay." *Judicial Watch*, 895 F.3d at 783. Rather, it is a case, like *Gutierrez*, in which the explanation for delay sounds in staffing and budgetary limitations, not recalcitrance or disobedience. 451 F. Supp. 2d at 70.

As USCIS explains without factual refutation, during the past five years, it has been deluged by FOIA requests, which have increased annually from 195,930 in FY 2020, Baxley Decl. ¶ 17, to 577,843 in FY 2024, Baxley Supp. Decl. ¶ 6. As USCIS further explains it, it has taken various short- and long-term steps to enable it to respond more quickly to FOIA requests.

Baxley Decl. ¶ 42.  These include hiring more than 80 additional staffers to support USCIS's FOIA program, authorizing overtime compensation for FOIA staff and other cross-trained government employees, employing third-party contractors, creating an electronic processing system to expedite submissions and productions, investing in electronic discovery platforms, and training staff to use that system.  Baxley Decl.  ¶¶ 42–47.

The agency has also continued to use a streamlined "multi-track system, first-in, first-out process" for triaging requests, and to employ a specialized FOIA unit.  *Id.* ¶ 41.  Those steps have been held to demonstrate the good faith and due diligence of an agency whose processing of FOIA requests was challenged in litigation.  *See Ctr. for Pub. Integrity v. U.S. Dep't of State*, No. 5 Civ. 2313, 2006 WL 1073066, at *4 (D.D.C. Apr. 24, 2006) (agency was "acting in good faith and exercising due diligence" where it "processe[d] requests on a first-in, first-out basis, with two tracks-simple/fast and routine/complex").

Plaintiffs note that the length of the average processing time in this case—more than 300 days—exceeds that in many reported cases that have declined to find an actionable policy or practice warranting injunctive relief.  Pls. Mem. at 11–14.  That distinction is valid.  However, as USCIS responds, more is needed to establish a policy and practice claim, if such are cognizable at all, than a showing of long delay.  Def. Reply at 9–12 (collecting cases).  As Judge Boasberg has aptly explained in cases involving delays of similar length:  A "prolonged delay would be a violation of FOIA," but an agency's "tardiness . . . only becomes actionable when 'some policy or practice' also undergirds it."  *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 283 (D.D.C. 2017) (a plaintiff "cannot rest on the mere fact of delay alone to establish a [pattern or practice] claim," even where agency took, on average, 111 days to produce records (cleaned up) (collecting cases)); *see Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 289 F. Supp.

3d 81, 89 (D.D.C. 2018) (Boasberg, J.) (no policy or practice despite agency's tardiness of responding to FOIA requests for "up to 286 days"). There must be an additional "signal [that] the agency has a policy or practice of ignoring FOIA's requirements." *Judicial Watch*, 895 F.3d at 780. Plaintiffs have not adduced facts to support that here. *See Am. Ctr. for L. & Just.*, 289 F. Supp. 3d at 89–90 (rejecting policy and practice claim where plaintiffs did not show "willful and intentional dereliction of [USCIS's] FOIA responsibilities"); *see also BuzzFeed Inc. v. U.S. Dep't of Just.*, No. 18 Civ 2370, 2022 WL 1101767, at *6 (D.D.C. Apr. 13, 2022) (delay in production justified based on substantial increase in FOIA requests). As a district court in the D.C. Circuit acknowledged in granting a stay several years ago of a FOIA response deadline based on a surge of requests directed to the agency respondent, "Congress surely could not have anticipated such a dramatic acceleration of the number of requests for information." *Democracy Forward Found.*, 354 F. Supp. 3d at 61; *see also BuzzFeed*, 2022 WL 1101767, at *6. Similarly here, the undisputed facts in this case reflect an agency contending with a dramatic proliferation of FOIA requests.

Although not necessary to this decision, USCIS's progress during this litigation, including making substantial FOIA productions and disclosures, reinforce that the delays in this case stemmed from the demand upon the agency, not its defiance of FOIA obligations. Courts in the D.C. Circuit, in considering policy and practice claims, have taken into account an agency's disclosures to requesters and production progress, including during litigation. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*, 279 F. Supp. 3d 121, 155 (D.D.C. 2017) (finding no pattern or practice "where EPA not only disclosed documents, but took steps to communicate with [plaintiff] about the pending FOIA requests"); *Gutierrez*, 451 F. Supp. 2d at 70. As of USCIS's most recent submission, it had responded to 55 of the 89 requests, *see* Baxley Supp.

34

Decl. ¶ 22, and plaintiffs concede that many of these requests were broad including as to time ranges, Calzareth Decl. ¶ 16. Relevant context too is that USCIS has also made meaningful progress responding to the other 778 FOIA requests that plaintiffs have made to it that are outside the scope of this Complaint. Baxley Decl. ¶ 58. USCIS responded to approximately 44% of these requests within the statutory time frame. *Id.*[8]

Accordingly, the Court holds, assuming that policy or practice claims are cognizable, the record here, viewing the facts in the light most favorable to plaintiffs, cannot establish such a claim. *See, e.g.*, *Pietrangelo II*, 2007 WL 1874190, at *10–12 (granting agency summary judgment because, based on its affidavits, its "conduct . . . d[id] not amount to the sort of bad faith conduct, and has not incurred the sorts of prolonged delays, that would entitle" plaintiff to equitable relief "due to an alleged pattern or practice of behavior"); *see also Telematch, Inc. v. U.S. Dep't of Agric.*, No. 19 Civ 2372, 2020 WL 7014206, at *10–12 (D.D.C. Nov. 27, 2020) (dismissing for lack of subject matter jurisdiction while separately noting that plaintiff "has not established the existence of an unlawful policy or practice" nor did agency affidavits suggest such), *aff'd*, 45 F.4th 343 (D.C. Cir. 2022); *Ctr. for Biological Diversity*, 279 F. Supp. 3d at 155 (granting agency summary judgment on policy and practice claim where evidence, including affidavits and exhibits filed by plaintiff and agency, did not establish that the agency "ever decided to refuse to produce any records"); *Gutierrez*, 451 F. Supp. 2d at 70 (granting agency summary judgment in part, "[d]ue to the increased volume of FOIA requests . . . and the agency's good-faith efforts in completing such requests," based on its filed affidavits).

---

[8] Although this tabulation is based on non-final data, USCIS further represents that, between FY 2023 and FY 2024, its SIG section cut by 10.12% the number of overall FOIA requests that had been pending before it for the longer than the statutory timeframe. Baxley Supp. Decl. ¶ 20 & n.2. SIG made this headway notwithstanding a 304.24% uptick in the requests it received (and a corresponding 351.16% increase in the requests it processed) during that timeframe. *Id.*

## CONCLUSION

For the foregoing reasons, the Court (1) dismisses the claim of plaintiff Reclaim the Records under Rule 12(b)(1), for lack of standing; this dismissal is without prejudice; (2) grants summary judgment to USCIS on the claims of the Individual Plaintiffs; and (3) denies all other motions as moot.

The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 40 and 47, and to close this case.

SO ORDERED.

_Paul A. Engelmayer_
PAUL A. ENGELMAYER
United States District Judge

Dated:  March 27, 2025
        New York, New York